TEXAS DEPARTMENT OF PARKS
AND WILDLIFE, Petitioner,

v.

Maria MIRANDA and Ray Miranda,
Respondents.

No. 01–0619.

Supreme Court of Texas.

Argued Oct. 30, 2002.

April 2, 2004.

Howard G. Baldwin, First Asst. Atty. Gen., Jeffrey S. Boyd, Thompson & Knight, Harry W. Deckard, Office of Attorney General, Nelly R. Herrera, Office of Attorney General, Julie Caruthers Parsley, Public Utility Com'n, and Lisa Royce Eskow, Attorney General's Office, Austin, for Petitioner.

Emmett R. Harris, Law Office of R. Emmett Harris, Jerry Don Evans, Uvalde, TX, for Respondent.

Justice WAINWRIGHT delivered the opinion of the Court with respect to parts I., II., III.A., III.B., III.C.2., III.C.3., III.D., and IV., in which Chief Justice PHILLIPS, Justice HECHT, Justice OWEN, and Justice SMITH joined, and a plurality opinion with respect to Part III.C.1., in which Chief Justice PHILLIPS, Justice HECHT, and Justice SMITH joined.

Maria Miranda sustained injuries after a tree limb fell on her at Garner State Park in Uvalde County. Maria and her husband Ray sued the Texas Parks and Wildlife Department,[1] alleging negligence and

---

1. The Mirandas originally named the "Texas Department of Parks and Wildlife" as defen-

gross negligence. The Department filed a plea to the jurisdiction, to which it attached supporting evidence, and argued that sovereign immunity barred the Mirandas' claims. The trial court denied the plea to the jurisdiction and a unanimous court of appeals affirmed, holding that the trial court could not consider evidence in support of the plea because the Department did not allege that the Mirandas' pleadings were a sham for the purpose of wrongfully obtaining jurisdiction. 55 S.W.3d 648, 652.

In accord with our decision in *Bland Independent School District v. Blue*, 34 S.W.3d 547 (Tex.2000), we hold that the trial court in this case was required to examine the evidence on which the parties relied to determine if a fact issue existed regarding the alleged gross negligence of the Department. Due to the unusual confluence of standards erected by the Legislature for waiver of sovereign immunity in the Texas Tort Claims Act and the recreational use statute, plaintiffs must plead gross negligence to establish subject matter jurisdiction. Further, if the plaintiffs' factual allegations are challenged with supporting evidence necessary to consideration of the plea to the jurisdiction, to avoid dismissal plaintiffs must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction. Because the Mirandas failed to raise a genuine issue of material fact regarding the alleged gross negligence of the Department, we conclude that the trial court lacked subject matter jurisdiction over this lawsuit. Therefore, we reverse the judgment of the court of appeals and render judgment dismissing the case.

## I. Factual and Procedural Background

The Mirandas' third amended petition contains the following allegations: In April 1998, the Mirandas and their family were camping and picnicking as paying guests at Garner State Park, owned and operated by the Texas Parks and Wildlife Department. The Mirandas asked a park ranger to recommend a campsite that would be safe for children. While standing next to a picnic table at the recommended campsite, a falling tree branch approximately twelve inches in diameter and fifteen feet long struck Maria on the head. As a result of the incident, Maria suffered extensive injuries to her head, neck, and spine. Ray suffered mental anguish and other damages related to his wife's injuries.

On May 7, 1999, the Mirandas filed suit against the Department, alleging negligence and later amended their suit to add gross negligence claims. With respect to the gross negligence claims, the Mirandas alleged that the Department "knew of the dangers of its falling tree branches, failed to inspect, failed to prune, failed to alleviate or remove the danger, and consciously and deliberately failed to warn Plaintiffs of the extremely dangerous condition," "knew that its property contained hidden, dangerous defect [sic] in that its tree branches which have not been inspected or pruned regularly fall," failed "to make safe the dangerous condition of its campsite trees," and "failed to warn or make reasonably safe the dangerous condition of which it was aware." In addition, the Mirandas alleged that the Department's conduct was "willful, wanton, or grossly negligent."

Over a year after the Mirandas filed suit and after the parties conducted discovery, the Department filed a plea to the jurisdic-

dant but corrected the name to the "Texas Parks and Wildlife Department" in their third amended petition. Because the parties and lower courts retained the original style of the case, we retain that style but in our opinion refer to the Department by its correct name.

tion and motion to dismiss, arguing that the Mirandas' allegations were insufficient to invoke a waiver of the Department's sovereign immunity under the standard established in the Tort Claims Act and the recreational use statute.[2] TEX. CIV. PRAC. & REM. Code §§ 101.001–.109; *id.* §§ 75.001–.004. The Department attached evidence in support of its plea. The Mirandas filed a response to the Department's plea and their third amended original petition. In their response, the Mirandas stated that they relied on evidence attached to the Department's plea, including written discovery responses from the Department and the deposition the Mirandas took of assistant park manager Craig VanBaarle. At the trial court's hearing on the Department's plea, the parties addressed the allegations in the Mirandas' third amended original petition. The next day, the trial court denied the plea. The Department filed this interlocutory appeal claiming that the trial court erroneously denied its plea to the jurisdiction and motion to dismiss. *Id.* § 51.014(a)(8). The court of appeals affirmed the trial court's denial of the plea, stating that the Mirandas pled a premises defect cause of action based on gross negligence under the recreational use statute. 55 S.W.3d at 652. The court of appeals rejected the Department's argument that there was no evidence to support gross negligence, holding that "the trial court was not authorized to inquire into the substance of the claims because the Department did not specifically allege that the Mirandas' allegations were pled merely as a sham for the purpose of wrongfully obtaining jurisdiction." *Id.* (citing Bland, 34 S.W.3d at 554 and *Rylander v. Caldwell,*

23 S.W.3d 132, 135 (Tex.App.-BAustin 2000, no pet.)).

The Department contends that the court of appeals erred in relying solely upon the conclusory allegations found in the Mirandas' petition to affirm the trial courts denial of the Department's plea to the jurisdiction and in disregarding the Department's evidence submitted with its plea. Specifically, the Department contends that gross negligence is a jurisdictional prerequisite to the Mirandas' claims and that its evidence affirmatively negates gross negligence. The Department further argues that because the Mirandas failed to plead specific facts alleging gross negligence in their petition or introduce evidence to controvert the evidence in the Department's plea, they failed to establish subject matter jurisdiction to proceed with the litigation.

After originally dismissing the petition for want of jurisdiction, we granted the Department's petition on motion for rehearing. Before we consider the substantive issues presented, we first determine whether we have jurisdiction over this interlocutory appeal.

## II. Conflicts Jurisdiction

■ When there is no dissent in the court of appeals, this Court has jurisdiction over interlocutory appeals only if the court of appeals' decision "holds differently" or conflicts with "a prior decision of another court of appeals or of the supreme court on a question of law material to a decision of the case." TEX. GOV'T CODE 22.001(a)(2);[3] *Schein v. Stromboe,* 102

2. The Department also moved for summary judgment under Texas Rule of Civil Procedure 166a(b)-(c)and 166a(I). The trial court denied both motions, but the Department does not appeal the trial court's denial of either motion.

3. The Legislature amended section 22.001 of the Government Code, effective September 1, 2003. Act of June 11, 2003, 78th Leg., R.S., Ch. 204 (codified as section 22.001(e) of the Texas Government Code). The amendment, which applies to actions filed on or after

S.W.3d 675, 687 (Tex.2002); *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 867 (Tex.2001). Two decisions conflict for purposes of establishing our jurisdiction under section 22.001(a)(2) when the two cases are so similar that the decision in one case is necessarily conclusive of the decision in the other. *Schein*, 102 S.W.3d at 687–88; *White*, 46 S.W.3d at 867. "The conflict must be on the very question of law actually involved and determined, in respect of an issue in both cases, the test being whether one would operate to overrule the other in case they were both rendered by the same court." *Christy v. Williams*, 156 Tex. 555, 298 S.W.2d 565, 568–69 (1957) (citation omitted).

The Department contends that this Court has jurisdiction over its interlocutory appeal because the court of appeals' decision here conflicts with our opinion in *Bland*. In *Bland*, we held that a trial court "may consider evidence *and must do so when necessary to resolve the jurisdictional issues raised*." 34 S.W.3d at 555 (emphasis added). While recognizing that "a dilatory plea does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction," we explained that "because a court must not act without determining that it has subject-matter jurisdiction to do so, it should hear evidence as necessary to determine the issue before proceeding with the case." *Id.* at 554. "The court should, of course, confine itself to the evidence relevant to the jurisdictional issue." *Id.* at 555.

In *Bland*, we included examples of when relevant evidence may be considered in determining whether jurisdiction has been established. *See id.* at 554. We also observed that when the defendant contends that the amount in controversy falls below the trial court's jurisdictional limit, the trial court should limit its inquiry to the pleadings. *Id.* In that situation, we concluded, "the plaintiff's pleadings are determinative unless the defendant specifically alleges that the amount was pleaded merely as a sham for the purpose of wrongfully obtaining jurisdiction." *Id.*

■ In this case, the court of appeals inaccurately stated and then misapplied *Bland's* holding. 55 S.W.3d at 650–52. The court of appeals held that an inquiry behind the factual allegations pled in support of subject matter jurisdiction was improper unless the Department specifically alleged that the Mirandas' allegations were pled merely as a sham to wrongfully obtain jurisdiction. *Id.* at 652. This conflicts with our holding in *Bland* that a court must consider evidence when necessary to resolve the jurisdictional issues raised. 34 S.W.3d at 555; *see also County of Cameron v. Brown*, 80 S.W.3d 549, 556–57 (Tex. 2002) (considering pleadings and limited jurisdictional evidence in evaluating forseeability element of premises defect claim under the Tort Claims Act); *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex.2001) (examining pleadings and limited jurisdictional evidence to determine whether plaintiff affirmatively demonstrated waiver of sovereign immunity); *White*, 46 S.W.3d at 868 (analyzing the facts alleged by the plaintiff and to the extent relevant, evidence submitted by the parties, in considering whether plaintiff stated a claim for injuries caused by "motor-driven equipment" under the Tort Claims Act).

September 1, 2003 and does not govern our jurisdiction in this case, provides that "one court holds differently from another when there is inconsistency in their respective deci-

sions that should be clarified to remove unnecessary uncertainty in the law and unfairness to litigants."

In *Bland,* our preclusion of a trial court's inquiry behind the facts pled in determining subject matter jurisdiction was limited to the jurisdictional amount. 34 S.W.3d at 554. Even this bar could be lifted, and evidence of the jurisdictional amount considered, in circumstances in which an adverse party asserts that the amount in controversy was pled as a sham to obtain jurisdiction.[4] *Id.* That circumstance is not at issue here. Thus, the court of appeals' holding conflicts with the same question of law that we decided in Bland, and the opinions cannot stand together. *Schein,* 102 S.W.3d at 689. This conflict provides the basis for our jurisdiction to consider the merits of the plea. See Tex. Gov't Code § 22.001(a)(2).

### III. The Department's Plea to the Jurisdiction

#### A. Sovereign Immunity

In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit. *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d

636, 638 (Tex.1999); *Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 405 (Tex.1997), *superseded by statute on other grounds as stated in Little–Tex Insulation Co.,* 39 S.W.3d at 593; *Duhart v. State,* 610 S.W.2d 740, 741 (Tex.1980); *Hosner v. DeYoung,* 1 Tex. 764, 769 (1847). The Texas Tort Claims Act provides a limited waiver of sovereign immunity. TEX. CIV. PRAC. & REM.CODE §§ 101.001–.109. Sovereign immunity includes two distinct principles, immunity from suit and immunity from liability. *Jones,* 8 S.W.3d at 638; *Fed. Sign,* 951 S.W.2d at 405. Immunity from liability is an affirmative defense, while immunity from suit deprives a court of subject matter jurisdiction. *Jones,* 8 S.W.3d at 638; *Fed. Sign,* 951 S.W.2d at 405. The Tort Claims Act creates a unique statutory scheme in which the two immunities are co-extensive: "Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter." TEX. CIV. PRAC. & REM.CODE § 101.025(a); *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez,* 82 S.W.3d 322, 326 (Tex.2002); *Miller,* 51 S.W.3d at 587. Thus, the Department is immune from suit unless the Tort Claims

---

4. The plaintiff's allegations in the petition of the amount in controversy control for jurisdictional purposes unless the party challenging jurisdiction pleads and proves that the plaintiff's allegations of the amount in controversy were made fraudulently for the purpose of obtaining jurisdiction. See *Bland,* 34 S.W.3d at 554; *Cont'l Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 449 (Tex.1996); *Tidball v. Eichoff,* 66 Tex. 58, 17 S.W. 263, 263 (1886). We disapprove of courts of appeals' holdings that require a party to allege that pleadings, other than the jurisdictional amount, are fraudulent in order for the trial court to consider evidence, when otherwise necessary, of whether it has jurisdiction over a case. *See, e.g., Sullivan v. Wilmer Hutchins Indep. Sch. Dist.,* 47 S.W.3d 529, 531 (Tex. App.-Dallas 2000), rev'd on other grounds, 51 S.W.3d 293 (Tex.2001); *Denton County v. Howard,* 22 S.W.3d 113, 117–18 (Tex.App.-

Fort Worth 2000, no pet.); *Tex. Dep't of Mental Health & Mental Retardation v. Pearce,* 16 S.W.3d 456, 460 (Tex.App.-Waco 2000, pet. dism'd w.o.j.); *Tex. State Employees Union/CWA Local 6184 v. Tex. Workforce Comm'n,* 16 S.W.3d 61, 65, 66 (Tex.App.-Austin 2000, no pet.); *DalMac Constr. Co. v. Tex. A & M Univ.,* 35 S.W.3d 654, 655 n. 1 (Tex.App.-Austin 1999), rev'd on other grounds, sub nom. *Gen. Servs. Comm'n v. Little–Tex Insulation Co., Inc.,* 39 S.W.3d 591 (Tex.2001); *Univ. of Houston v. Elthon,* 9 S.W.3d 351, 356 (Tex.App.-Houston [14th Dist.] 1999, pet. dism'd w.o.j.); *Curbo v. State, Office of the Governor,* 998 S.W.2d 337, 341–42 (Tex.App.-Austin 1999, no pet.); *City of Saginaw v. Carter,* 996 S.W.2d 1, 3 (Tex.App.-Fort Worth 1999, pet. dism-d w.o.j.); *Bland Indep. Sch. Dist. v. Blue,* 989 S.W.2d 441, 447 (Tex.App.-Dallas 1999), rev'd, 34 S.W.3d 547 (Tex.2000).

Act expressly waives immunity. *See* TEX. CIV. PRAC. & REM.CODE §§ 101.001(3)(A) (defining a governmental unit to include "all departments" of the state), 101.021, 101.025; *White,* 46 S.W.3d at 868.

The Tort Claims Act expressly waives sovereign immunity in three areas: " 'use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property.' " *Brown,* 80 S.W.3d at 554 (quoting *Tex. Dep't of Transp. v. Able,* 35 S.W.3d 608, 611 (Tex. 2000)); *see* TEX. CIV. PRAC. & REM CODE § 101.021. Section 101.058 of the Tort Claims Act further modifies a governmental unit's waiver of immunity from suit by imposing the limitations of liability articulated in the recreational use statute. TEX. CIV. PRAC. & REM.CODE § 101.058 ("To the extent that Chapter 75 limits the liability of a governmental unit under circumstances in which the governmental unit would be liable under [the Tort Claims Act], Chapter 75 controls.").

The recreational use statute provides:

If an owner, lessee, or occupant of real property other than agricultural land gives permission to another to enter the premises for recreation, the owner, lessee, or occupant, by giving the permission, does not:

(1) assure that the premises are safe for that purpose;

(2) owe to the person to whom permission is granted a greater degree of care than is owed to a trespasser on the premises; or

(3) assume responsibility or incur liability for any injury to any individual or property caused by any act of the person to whom permission is granted.

*Id.* § 75.002(c)(1)-(3). Recreational use includes camping and picnicking, the activities in which the Mirandas were engaged at the state park when Maria was injured. *Id.* § 75.001(3). As applied to a governmental unit, the recreational use statute limits liability even if the person pays to enter the premises. *Id.* § 75.003(c) (excepting governmental units from the chapter's exclusion of landowners who charge a fee for recreational use of land).

 The recreational use statute limits the Department's duty for premises defects to that which is owed a trespasser.[5] *Id.* The limited duty owed a trespasser is not to injure that person willfully, wantonly, or through gross negligence. *Tex. Utils. Elec. Co. v. Timmons,* 947 S.W.2d 191, 193 (Tex.1997). Therefore, a governmental unit waives sovereign immunity under the recreational use statute and the Tort Claims Act only if it is grossly negligent. TEX. CIV. PRAC. & REM.CODE § 75.002(c)-(d); *City of Bellmead v. Torres,* 89 S.W.3d 611, 613 (Tex.2002); *Timmons,* 947 S.W.2d at 193. "[G]ross negligence involves two components: (1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others." *Louisiana–Pacific Corp. v. Andrade,* 19 S.W.3d 245, 246 (Tex. 1999) (citing *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 23 (Tex.1994)).

### B. Standard of Review

 Sovereign immunity from suit defeats a trial court's subject matter juris-

---

**5.** The recreational use statute does not limit the liability of an owner, lessee, or occupant "who has been grossly negligent or has acted with malicious intent or in bad faith." TEX. CIV. PRAC. & REM.CODE 75.002(d).

diction and thus is properly asserted in a plea to the jurisdiction. *Jones,* 8 S.W.3d at 637; *see also Hosner,* 1 Tex. at 769 (recognizing as appropriate procedure the challenge of a courts subject matter jurisdiction through a plea to the jurisdiction). The trial court must determine at its earliest opportunity whether it has the constitutional or statutory authority to decide the case before allowing the litigation to proceed. *Austin & N.W.R. Co. v. Cluck,* 97 Tex. 172, 77 S.W. 403, 405 (1903) ("[T]here can be no doubt that the courts of Texas must look to the Constitution of this state, the enactments of the Legislature, and the common law for their authority to proceed . . . .);" *see also State Bar of Tex. v. Gomez,* 891 S.W.2d 243, 245 (Tex. 1994) ("As a general proposition, before a court may address the merits of any case, the court must have jurisdiction over the party or the property subject to the suit, jurisdiction over the subject matter, jurisdiction to enter the particular judgment, and capacity to act as a court.)"; *Gentry v. Bowser,* 2 Tex.Civ.App. 388, 21 S.W. 569, 570 (Fort Worth 1893, no writ) ("Certainly the court has the right to hear the necessary evidence to enable it to decide as to whether or not it has power to try the case it is sought to have it adjudicate, whether the allegations disclosing such want of jurisdiction appear in the petition of the plaintiff, or in the plea to the jurisdiction by the defendant.").

▮▮▮ Whether a court has subject matter jurisdiction is a question of law. *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002). Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law reviewed *de novo.* Likewise, whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law. However, in some cases, disputed evidence of jurisdictional facts that also implicate the merits of the case may require resolution by the finder of fact. *See Gates v. Pitts,* 291 S.W. 948, 949 (Tex.Civ.App.-Amarillo 1927, no writ); *Gentry,* 21 S.W. at 570; *see also Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 363 n. 3 (1st Cir.2001) (observing that in certain situations, the predicate facts can be so inextricably linked to the merits of the controversy that the district court may "defer resolution of the jurisdictional issue until the time of trial"); *Cameron v. Children's Hosp. Med. Ctr.,* 131 F.3d 1167, 1170 (6th Cir.1997) ("[W]hether a district court has subject matter jurisdiction is a question for the court, not a jury, to decide, even if the determination requires making factual findings, unless the jurisdictional issue is inextricably bound to the merits of the case."); *Williamson v. Tucker,* 645 F.2d 404, 413 n. 6, 416 n. 10 (5th Cir.1981) (suggesting that a federal district court's role in determining jurisdictional facts may be more limited in cases in which the jurisdictional attack implicates the merits of plaintiff's cause of action). In this case, we address a plea to the jurisdiction in which undisputed evidence implicates both the subject matter jurisdiction of the court and the merits of the case.

▮▮▮ When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent. *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plain-

tiffs should be afforded the opportunity to amend. *Brown*, 80 S.W.3d at 555. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.*

 However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *See Bland*, 34 S.W.3d at 555 (confining the evidentiary review to evidence that is relevant to the jurisdictional issue). When the consideration of a trial court's subject matter jurisdiction requires the examination of evidence, the trial court exercises its discretion in deciding whether the jurisdictional determination should be made at a preliminary hearing or await a fuller development of the case, mindful that this determination must be made as soon as prac-

ticable. *Id.* at 554. Then, in a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. The United States Supreme Court and all of the federal circuits have authorized federal district courts to consider evidence in deciding motions to dismiss for lack of subject matter jurisdiction. *See* Fed.R.Civ.P. 12(b)(1); *Land v. Dollar*, 330 U.S. 731, 735 & n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209, (1947), *overruled by implication on other grounds by Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949) (observing that as a general rule, district courts have authority to inquire "into the facts as they exist" "by affidavits or otherwise" as well as the pleadings when determining whether the court has subject matter jurisdiction).[6] If the evi-

---

**6.** *See, e.g., Harris v. P.A.M. Transp., Inc.*, 339 F.3d 635, 637 n. 4 (8th Cir.2003) (acknowledging district court's authority to consider matters outside the pleadings when subject matter jurisdiction is challenged under Rule 12(b)(1)); *Johnson v. Apna Ghar, Inc.*, 330 F.3d 999, 1001 (7th Cir.2003) (observing that when considering a motion for dismissal for lack of subject matter jurisdiction, " '[t]he district court may properly . . . view whatever evidence has been submitted on the issue' " (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir.1999))); *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir.2002) (noting district court's " 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)' " (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995))); *Valentin*, 254 F.3d at 363 (district court has "broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction"); *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir.2000) (" 'district court obviously does not abuse its discretion by looking to . . . extra-pleading material' " in

deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.1989))); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000) (allowing district court to "refer to evidence outside the pleadings" to resolve a Rule 12(b)(1) motion); *Williams v. United States*, 50 F.3d 299, 304 (4th Cir.1995) ("In ruling on a Rule 12(b)(1) motion, the court may consider exhibits outside the pleadings."); *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir.1994) (acknowledging a trial court's "authority to consider evidence presented beyond the pleadings . . . which may include considering affidavits, allowing further discovery, hearing oral testimony, conducting an evidentiary hearing"); *Herbert v. Nat'l Acad. of Sci.*, 974 F.2d 192, 197 (D.C.Cir.1992) ("[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."); *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990) (noting that "substantial authority" acknowledges the trial court's freedom to consider disputed evidence

dence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.

We acknowledge that this standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c). We adhere to the fundamental precept that a court must not proceed on the merits of a case until legitimate challenges to its jurisdiction have been decided. This standard accomplishes this goal and more. It also protects the interests of the state and the injured claimants in cases like this one, in which the determination of the subject matter jurisdiction of the court implicates the merits of the parties' cause of action. The standard allows the state in a timely manner to extricate itself from litigation if it is truly immune. However, by reserving for the fact finder the resolution of disputed jurisdictional facts that implicate the merits of the claim or defense, we preserve the parties' right to present the merits of their case at trial. Similar to the purpose of a plea to the jurisdiction, which is to defeat a cause of action for which the state has not waived sovereign immunity (usually before the state has incurred the full costs of litigation), the purpose of summary judgments in Texas is " 'to eliminate patently unmeritorious claims and untenable defenses.' " *Casso v. Brand,* 776 S.W.2d 551,

556 (Tex.1989) (quoting *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 n. 5 (Tex.1979)). By requiring the state to meet the summary judgment standard of proof in cases like this one, we protect the plaintiffs from having to "put on their case simply to establish jurisdiction." *Bland,* 34 S.W.3d at 554. Instead, after the state asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiffs, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue. *See Huckabee v. Time Warner Entm't Co. L.P.,* 19 S.W.3d 413, 420 (Tex. 2000); *Phan Son Van v. Pena,* 990 S.W.2d 751, 753 (Tex.1999).

Appellate courts reviewing a challenge to a trial court's subject matter jurisdiction review the trial court's ruling *de novo. IT–Davy,* 74 S.W.3d at 855. When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant. *See Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

In his dissent JUSTICE JEFFERSON criticizes this standard of review as depriving plaintiffs responding to a plea of the procedural protections of a motion for summary judgment, including a twenty-

when deciding a Rule 12(b)(1) motion) (citations omitted); *Gould, Inc. v. Pechiney Ugine Kuhlmann,* 853 F.2d 445, 451 (6th Cir.1988) ("[T]he district court may consider affidavits, allow discovery, hear oral testimony, order an evidentiary hearing, or even postpone its determination if the question of jurisdiction is intertwined with the merits."); *Mortensen v.*

*First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977) (acknowledging that "substantial authority" allows trial courts to weigh the evidence of disputed facts when considering a Rule 12(b)(1) motion); see also 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1364, at 468–469 (2d ed.1990).

one day notice period or an adequate time to conduct discovery. Tex.R. Civ. P. 166a(c), 166a(i). However, the scheduling of a hearing of a plea to the jurisdiction is left to the discretion of the trial court, which is in the best position to evaluate the appropriate time frame for hearing a plea in any particular case. This procedure does not dramatically differ from that outlined in Texas Rule of Civil Procedure 120a governing special appearances. Although Rule 120a requires any affidavits to be used at a hearing on a special appearance to be served at least seven days before the hearing, it does not specify the length of a notice period and is therefore presumably subject to the three-day notice period of Rule 21. Tex.R. Civ. P. 21. Rule 120a allows the trial court to order a continuance and allow time for discovery if the development of the case requires it. Nothing prevents a trial court from doing the same with a plea to the jurisdiction where evidence is necessary.

Many other procedures in Texas practice ranging from a trial court's rulings on motions to strike intervention to the timing of a class certification decision to even the alteration of the summary judgment notice periods—also "depend[ ] ... upon the wise exercise of discretion by the trial court." *Union Carbide Corp. v. B.D. Moye*, 798 S.W.2d 792, 794 (Tex.1990) (Hecht, J., concurring); *see, e.g.,* Tex.R. Civ. P. 42(c)(1)(A) (directing a trial court to determine whether a suit may be maintained as a class action "at an early practicable time"); Tex.R. Civ. P. 166a(c) (*"Except on leave of court,* with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing.") (emphasis added); *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.,* 793 S.W.2d 652, 657 (Tex.1990) (observing that the trial court has broad discretion in ruling on a motion to strike

intervention, even though Rule 60 does not provide explicit guidelines for the scheduling of a hearing or the evaluation of evidence). Thus, the Texas civil procedural scheme entrusts many scheduling and procedural issues to the sound discretion of the trial court, subject to appellate review. Of course, Texas practice and rules also allow the parties to request additional time to prepare for certain hearings or to conduct discovery upon a showing of sufficient cause, and the court's ruling on such a motion is reviewed for an abuse of discretion. *See, e.g.,* Tex.R. Civ. P. 166a(g), 247, 251, 252. We note, also, that federal practice does not prescribe a procedure for the consideration of jurisdictional evidence but instead allows the district courts to tailor a method to suit the requirements of the cases before them. *Land,* 330 U.S. at 735 n. 4, 67 S.Ct. 1009; *Moran,* 27 F.3d at 172. In any event, the Mirandas do not complain that they had an inadequate opportunity to conduct sufficient discovery, nor did they request a continuance to do so.

## C. Waiver of Immunity Based on Premises Defects

### 1. The Mirandas' Pleadings

■ The Mirandas contend that their pleadings fall within the Tort Claims Act's waiver of immunity for both premises defects and injuries arising out of conditions or use of property. The Act provides that a state agency is liable for injury and death caused by "a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem.Code § 101.021(2). The Mirandas' pleadings allege injuries caused by a falling tree limb, which falls under the definition of real property *i.e.,* " 'land, and generally whatever is erected or growing upon or affixed

to land.'" *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 640 (Tex.2000) (quoting *Chastain v. Koonce*, 700 S.W.2d 579, 584 (Tex.1985) (Gonzalez, J., concurring)). The Mirandas' allegation of an injury caused by a tree limb falling on Maria Miranda constitutes an allegation of a condition or use of real property and is an allegation of a premises defect.

To state a claim under the recreational use statute, the Mirandas must allege sufficient facts to establish that the Department was grossly negligent. *See* TEX. CIV. PRAC. & REM.CODE §§ 75.002(c)-(d), 101.021, 101.025, 101.058. The Mirandas contend that both their allegations and the evidence presented on the plea establish claims of gross negligence. Looking first to the relevant factual allegations in the third amended petition, the Mirandas claim that (1) they specifically asked the Department's employee for a recommendation of a safe camping location; (2) at the campsite, Maria was struck by a falling tree branch that severely injured her; (3) the unpruned, uninspected tree branches created a dangerous, defective condition on the premises of which the Department was aware; (4) the Department knew of the dangers of its falling tree branches but failed to inspect, prune, alleviate the dangers, or otherwise make safe the dangerous conditions of its trees; (5) the Department consciously and deliberately failed to warn the Mirandas of the extremely dangerous condition; and (6) the Department's conduct was willful, wanton, or grossly negligent. A liberal construction of these allegations, as required, demonstrates that the Mirandas stated a claim against the Department for gross negligence. This conclusion should not be read as a suggestion that the Department has a duty to inspect every tree in each of the many parks that the Department manages. Instead, in this case, the Mirandas alleged

sufficient facts to survive a plea to the jurisdiction based solely on the pleadings.

JUSTICE JEFFERSON'S dissent contends that the Mirandas' third amended petition does not state a claim for gross negligence because the allegations are conclusory and do not assert enough specific facts alleging that the Department had "actual subjective awareness of the risk involved and proceeded, nevertheless, with conscious indifference. He suggests that to state a claim the Mirandas should have pled that the Department had actual knowledge that the branch would fall yet nevertheless instructed Maria to camp beneath it." 133 S.W.3d at 242. The pleading hurdle he seeks to erect would be groundbreaking, indeed, extending beyond current requirements under our rules of civil procedure and case law. Rules 45 and 47 require that the original pleadings give a short statement of the cause of action sufficient to give the opposing party fair notice of the claim involved. TEX.R. CIV. P. 45, 47; *Paramount Pipe & Supply Co., Inc. v. Muhr*, 749 S.W.2d 491, 494 (Tex.1988); *Castleberry v. Goolsby Bldg. Corp.*, 617 S.W.2d 665, 666 (Tex.1981). Rule 45 does not require that the plaintiff set out in his pleadings the evidence upon which he relies to establish his asserted cause of action. *Muhr*, 749 S.W.2d at 494–95. While it is clear that "[t]he party suing the governmental entity must establish the state's consent, which may be alleged either by reference to a statute or to express legislative permission," *Jones*, 8 S.W.3d at 638, and that "[m]ere reference to the Tort Claims Act does not establish the state's consent to be sued and thus is not enough to confer jurisdiction on the trial court," *Miller*, 51 S.W.3d at 587, the Mirandas' pleadings allege sufficient facts to bring their claims under the recreational use statute and the Tort Claims Act.

Although facts alleged in a petition should not be improperly stretched to state a claim for gross negligence, JUSTICE JEFFERSON's pleading standard for gross negligence would be virtually impossible to meet, even when grossly negligent conduct occurred, absent an admission of liability. His standard requires specific factual allegations in an original petition of what the defendant knew and thought *i.e.*, its state of mind. His pleading hurdle would require discovery into the very extrinsic facts which he bemoans consideration of in the plea to the jurisdiction. The Mirandas' third amended petition provided sufficient notice to ascertain the nature and basic issues of the controversy and the evidence that probably would be relevant.

JUSTICE JEFFERSON also contends that the Mirandas are entitled to replead. As a practical matter, the Mirandas have already repled to try to cure the "defects" that JUSTICE JEFFERSON raises. The Mirandas no doubt filed their third amended petition, in which allegations of gross negligence were raised for the first time in this lawsuit, in response to the Department's plea to the jurisdiction. However, because the Mirandas' third amended petition satisfies the notice pleading requirements of our procedural rules, the Mirandas do not need, nor are they entitled to, an opportunity to replead. *See* TEX.R. CIV. P. 47.

### 2. The Department's Evidence

The Department challenged the Mirandas' pleadings and also submitted evidence to controvert the factual allegations supporting jurisdiction. We consider the relevant evidence submitted to decide this jurisdictional challenge. *See Bland,* 34 S.W.3d at 555. The Department attached the deposition testimony of Craig VanBaarle, the assistant park manager for Garner State Park, to its plea to the juris-

diction. VanBaarle testified that while the park normally inspects and maintains its trees, tree limbs are only pruned or trimmed if they appear to be dead. According to VanBaarle, the tree limb that fell on Maria was living. He testified that both dead and living tree limbs have fallen at various locations in the park. He testified that the park knows that tree limbs can fall and have fallen on approximately twenty occasions. However, no one had ever been injured by falling tree limbs. He also testified that the tree limb that injured Maria Miranda fell from fifty feet above the campsite and that the park employees would not have been able to see the limb clearly without climbing the tree even if the limb had been dead.

In addition, the Department attached the affidavit of Roy B. Inks, operations and maintenance specialist at Garner State Park. Inks' responsibilities included supervision of park maintenance including preservation and maintenance of trees at campsites. According to his affidavit, Inks inspected the campsite after the accident. His examination of the tree and the fallen branch failed to reveal any indication that the branch was dead, decaying, or in need of pruning. Inks opined that there was no reason to conclude that the tree presented a dangerous or hazardous condition. Inks further opined that the branch that struck Maria "broke away from the tree as a result of an unpredictable and unforseeable phenomenon known as 'sudden branch drop syndrome.'" Inks explained that "[i]t would be rare for anyone to be able to predict which branches will fall and which ones will not" as a result of this phenomenon. The Mirandas cite the Department's evidence as proof that the Department knew about sudden branch drop syndrome and did nothing about it, thus establishing gross negligence. The Mirandas did not cite any controverting evidence in their response to the Department's plea.

We first examine this evidence to determine whether it establishes that the Department was grossly negligent. We have observed that with regard to the subjective component of gross negligence, it is the defendant's state of mind whether the defendant knew about a peril but nevertheless acted in a way that demonstrated that he did not care about the consequences that separates ordinary negligence from gross negligence. *Louisiana–Pacific*, 19 S.W.3d at 246–47. We search the record for evidence that the Department's acts or omissions demonstrate that it did not care about the consequences to the Mirandas of a known extreme risk of danger. The Mirandas fail to point to any evidence, and the record contains no evidence, that shows that sudden branch drop syndrome constitutes an extreme risk of danger or that the Department had actual, subjective knowledge of that risk but nevertheless proceeded in conscious disregard for the safety of others. Nor is there any evidence that the Department could have taken any reasonable steps to minimize the dangers of an "unforeseeable" and "unpredictable" phenomenon. We conclude that the evidence in the record establishes that the Department was not grossly negligent and that the Mirandas have failed to raise a fact question regarding the Department's alleged gross negligence. The Mirandas fall short of satisfying the requirements for the Legislature's limited grant of a waiver of sovereign immunity from suit under the applicable statutes. Therefore, the trial court lacked subject matter jurisdiction.

### 3. Dissent

In his dissent, JUSTICE BRISTER takes the view that all pleas to jurisdiction based on immunity must take the form of two "standard" or "established" motions—either special exceptions or motions for summary judgment. 133 S.W.3d at 239–40. This approach might be appropriate, if we were starting from scratch. Given that we are not writing on a blank slate, that pleas have been a useful procedural vehicle in Texas for over 150 years, and that use of its counterpart (Federal Rule of Civil Procedure 12(b)(1)) to challenge subject matter jurisdiction in the federal judicial system when evidence is involved has been authorized by every federal circuit court, the Court declines to abolish by written opinion such pleas to the jurisdiction.

The plea to the jurisdiction was included in procedural rules promulgated by this Court in 1877 and has been used as a procedural vehicle to challenge subject matter jurisdiction in trial courts for over a century and a half. *See* TEX.R. CIV. P. 85; TEX. DIST. CT. R. 7, 47 Tex. 597, 617 (1877); *Hosner*, 1 Tex. at 769. In fact, as early as 1893, Texas courts indicated that evidentiary challenges to subject matter jurisdiction raised in pleas to the jurisdiction should be considered by trial courts. *See, e.g., Gates*, 291 S.W. at 949; *Gentry*, 21 S.W. at 570. With such a long lineage, one wonders why a plea to jurisdiction does not qualify as a "standard" or "established" motion. Perhaps a second mention in the Texas Rules of Civil Procedure would suffice.

We decide that refining the rules for considering a plea supported by evidence is a better approach than eliminating the motion. This approach is consistent with precedent, is not disruptive to civil practice going back more than a century, and furthers the legislative purpose of timely adjudicating subject matter jurisdiction when the immunity and liability facts are the same.

There is a suggestion in the dissents that confirming in this opinion the authority of trial courts to consider evidence in a plea to the jurisdiction is unfair to the

parties in this case. The facts undercut this assertion. At the trial court, both parties relied on extrinsic evidence in briefing the plea, and both parties had extrinsic evidence on file with the court. Furthermore, plaintiffs expressly stated in their response to the plea that they were relying on "Defendants' responses to discovery requests, and upon the deposition of Craig VanBaarle [the Department's assistant park manager]." In fact, the Mirandas deposed VanBaarle months before the Department filed its plea. There is good reason why Plaintiffs have not argued unfair surprise. Given Texas precedents and the actions of the parties, there was none.

### D. Waiver of Immunity Based on Condition or Use of Tangible Property

■ The Mirandas assert that their pleadings also state a cause of action for injuries resulting from a condition or use of tangible property. The allegations' in the Mirandas third amended petition concern only the Department's failure to act to reduce risks of falling tree limbs and failure to warn the Mirandas of the risk of falling tree limbs. These allegations comprise the elements of their premises defect claim. The Tort Claims Act's scheme of a limited waiver of immunity from suit does not allow plaintiffs to circumvent the heightened standards of a premises defect claim contained in section 101.022 by recasting the same acts as a claim relating to the negligent condition or use of tangible property. *See State v. Tennison*, 509 S.W.2d 560, 562 (Tex.1974) (rejecting the argument that the Tort Claims Act "creates two entirely separate grounds of liability" for negligent use or condition of real property and premise defect, but instead interpreting the premises defect provision to further limit the waiver of immunity for negligent use or condition of real

property). Other Texas courts have recognized that to allow plaintiffs to characterize premises defect claims as claims caused by the negligent condition or use of personal or real property would render the Legislature's heightened requirements for premises defect claims meaningless. *See, e.g., State v. Estate of Horton*, 4 S.W.3d 53, 54 (Tex.App.-Tyler 1999, no pet.) (stating that once a claim is determined to be a premises defect, the claimant is limited to the provisions delineated by the section on premises defects and may not assert a general negligence theory); *accord Laman v. Big Spring State Hosp.*, 970 S.W.2d 670, 671–72 (Tex.App.-Eastland 1998, pet. denied); *Univ. of Texas Pan Am. v. Valdez*, 869 S.W.2d 446, 450 (Tex.App.-Corpus Christi 1993, writ denied); *Hawley v. State Dep't of Highways and Pub. Transp.*, 830 S.W.2d 278, 281 (Tex.App.-Amarillo 1992, no writ). Accordingly, we conclude that the Mirandas have not established a cause of action under the Tort Claims Act for condition or use of tangible property separate from their premises defect claim.

### IV. Conclusion

Trial courts should decide dilatory pleas early at the pleading stage of litigation if possible. Here, the Legislature's mandate is not so simple. By statute, waiver of sovereign immunity for recreational use of the Department's premises can only be effected by a showing that it acted with gross negligence. Due to the standard erected (gross negligence), the determination of whether immunity was waived may require consideration of extrinsic facts after reasonable opportunity for targeted discovery. To preclude consideration of extrinsic facts when necessary to decide a plea to the jurisdiction would require a trial on the merits for many cases that do not need it, waste the resources of the courts and the parties in the case, and

involve state courts in rulings on the merits in cases over which they have no jurisdiction.

For the reasons explained, we conclude that the Department established that it was not grossly negligent and that the Mirandas failed to raise a fact issue on that point. Thus, the trial court lacked subject matter jurisdiction over the action. The judgment of the court of appeals is reversed and the Mirandas' action dismissed for lack of subject matter jurisdiction.

Justice JEFFERSON filed a dissenting opinion.

Justice BRISTER filed a dissenting opinion, in which Justice O'NEILL and Justice SCHNEIDER joined.

Justice JEFFERSON, dissenting.

I dissent on two grounds. First, I do not agree that our precedent requires the Mirandas to produce evidence on all essential elements of their cause of action to establish the trial court's jurisdiction. The Court's holding is inconsistent with the distinction *Bland* draws between requiring the plaintiff to prove preliminary facts as a predicate to the trial court's power to entertain the merits, and requiring her to present the merits themselves on pain of dismissal. *Bland Indep. School Dist. v. Blue,* 34 S.W.3d 547 (Tex.2000).[1]

Second, I cannot agree that the Mirandas' pleading has alleged sufficient facts to confer jurisdiction on the trial court. The Mirandas assert that the Department was aware that branches fall from trees, but consciously chose not to post warnings. Is that gross negligence? *No. Texas law does not impose on landowners a duty to warn trespassers about all conceivable dangers inherent in nature.* What if you add the allegation that the Department did not inspect or prune trees in Garner State Park? *The Court today makes clear that the Department has no duty to inspect trees in state parks.* 133 S.W.3d 242. *If there is no duty, a complaint about the failure to inspect or prune cannot possibly constitute a gross negligence pleading sufficient to invoke the court's jurisdiction.* But the Mirandas used the words "gross negligence." *Not enough. The Mirandas pleaded no facts even remotely suggesting the Department was aware the limb was about to fall, much less that it would injure Maria.*

# I

## *Bland,* in Proper Context

In deciding a plea to the jurisdiction, the trial court must consider evidence "when necessary to resolve the jurisdictional issues raised." *Bland,* 34 S.W.3d at 555. That quote must be read in context. We noted that when a defendant challenges an organization's standing to sue, the organization must present evidence of its nature and purpose before it can pursue its claims—a burden that "does not involve a significant inquiry into the substance of the claims." *Id.* at 554. Similarly, we

---

1. I agree that the court of appeals' holding conflicts with *Bland* to the extent it holds that the trial court was prohibited from inquiring into the merits *because* "... the Department did not specifically allege that the Miranda allegations were pled merely as a sham for the purpose of wrongfully obtaining jurisdiction." 55 S.W.3d 648, 652. *Bland* does not require that form of defensive pleading as the sole gateway through which the trial court may consider evidence. If that were so, we could not have held that there are limited circumstances in which, even in the absence of a defendant's pleading that the plaintiff's pleadings were a sham, the trial court is required to consider evidence. I depart from the Court's holding, however, that this is such a case.

observed that a challenge to personal jurisdiction may "touch on the merits of the case," but is not aimed at "whether the defendant may be liable as alleged." *Id.* at 555. That theme—that a plaintiff is not required to litigate the merits to establish jurisdiction—was emphasized throughout our opinion. *Id.* at 554. We cautioned that "the proper function of a dilatory plea does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction." *Id.*

I interpret *Bland* to mean that if a plea to the jurisdiction requires the trial court to wade deeply into the lawsuit's merits, it is not a valid plea. Yet today the Court immerses itself in the merits by reaching and deciding the ultimate issue in the case: "... *the evidence in the record establishes that the Department was not grossly negligent and that the Mirandas have failed to raise a fact question regarding the Department's alleged gross negligence.*" 133 S.W.3d at 221 (emphasis added). This holding misapplies *Bland* because it permits a defendant, on painfully short notice and before evidence has been developed, to force the plaintiff either to present evidence on the ultimate issue in the lawsuit, or lose the right to a jury trial on the merits.

The Court asserts that its standard "mirrors that of a summary judgment...." 133 S.W.3d 228. It is a poor reflection. Our summary judgment rule,

unlike the Court's standard, contains procedural safeguards to ensure that the merits are not determined before the nonmovant has had an adequate time for discovery and an opportunity to respond. Tex.R. Civ. P. 166a(c) ("Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing. Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response."); 166a(i) ("After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense....)". As a uniform rule of procedure, the summary judgment rule leaves little to the imagination. A party whose claim is subject to adjudication on the merits is entitled to advance notice that it must present evidence and has an adequate opportunity to respond.[2] The procedure the Court adopts today, in contrast, will vary from county to county and from judge to judge.

The Court cites a number of federal decisions holding that when jurisdictional facts are intertwined with the merits, the trial court, in considering evidence, should either employ the standard applicable to a summary judgment or leave the jurisdic-

---

2. The prevailing view appears to be that the timeline is strictly enforced. *See Luna v. Estate of Rodriguez,* 906 S.W.2d 576, 582 (Tex. App.-Austin 1995, no writ) ("Because summary judgment is a harsh remedy, we strictly construe the twenty-one day time limit."). *Accord Burns Motors, Inc. v. Gulf Ins. Co.,* 975 S.W.2d 810, 812 (Tex.App.-Corpus Christi 1998) *rev'd on other grounds,* 22 S.W.3d 417 (Tex.2000); *Martin v. Martin, Martin & Richards, Inc.,* 991 S.W.2d 1, 11 (Tex.App.-Fort Worth 1997) *rev'd on other grounds,* 989

S.W.2d 357 (Tex.1998); *Bell v. Showa Denko K.K.,* 899 S.W.2d 749, 759 (Tex.App.-Amarillo 1995, writ denied); *Stephens v. Turtle Creek Apartments, Ltd.,* 875 S.W.2d 25, 27 (Tex. App.-Houston [14th Dist.] 1994, no writ); *Wavell v. Caller–Times Pub. Co.,* 809 S.W.2d 633, 637 (Tex.App.-Corpus Christi 1991, writ denied); *Williams v. City of Angleton,* 724 S.W.2d 414, 417 (Tex.App.-Houston [1st Dist.] 1987, writ refd n.r.e.) *disapproved of on other grounds,* 876 S.W.2d 314 (Tex.1994).

tional determination to trial. 133 S.W.3d 228; *see also* 2 James Wm. Moore Et al., Moore's Federal Practice § 12.30[3], at 12–37 to 12–38 (3d ed.2003). I do not disagree with that proposition, but it does not answer a fundamental question. This Court must decide what procedure governs *in Texas* when a plea to the jurisdiction is treated like a motion for summary judgment.

As Justice Brister observes, no procedural rule currently requires a trial court to advise the plaintiff that evidence may or must be presented in opposition to a plea to the jurisdiction, and no rule requires an adequate time for discovery before the court dismisses a case on the merits. 133 S.W.3d at 237. By default, then, trial courts will turn to Rule 21. Tex.R. Civ. P. 21. Presumably, if a trial court's ruling comports with Rule 21's minimum procedural requirements, a dismissal on the merits will survive any challenge based on an abuse of discretion standard. We should ask ourselves, then, whether the Rule's minimum requirements are adequate when the stakes are no less than a party's ability to present its case on the merits.

Under Rule 21, a plea to the jurisdiction may be served "three days before the time specified for the hearing unless otherwise provided by these rules or shortened by the court." *Id.* The rule does not mention an adverse party's right to present opposing evidence, which may explain why the Mirandas did not controvert the Department's plea with their own evidence. Compiling evidence of simple negligence on three days' notice—evidence that typically requires months of discovery—would be daunting in itself; but where, as here, a plaintiff must prove *gross negligence,* her ability to contest the Department's jurisdictional plea could be essentially non-existent.

The Mirandas had no reason to suspect that a summary judgment standard applied, requiring them to controvert the Department's evidence, because the Department's plea to the jurisdiction was subject to *Bland.* 34 S.W.3d at 554–55 (trial court not authorized to inquire so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction). At a minimum, I would hold that if a summary judgment standard applies, the trial court must so advise the parties and employ Rule 166a procedures.

## II

### Pleading Requirements Under Recreational Use Statute

Rather than dismiss the case on the merits under a summary judgment standard, I would examine the pleadings to determine whether the Mirandas alleged facts sufficient to invoke the trial court's jurisdiction. *See Tex. Ass'n Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993) (plaintiff has burden to allege facts affirmatively demonstrating that the trial court has subject matter jurisdiction). In my view, the Mirandas' pleading falls short. Just as the Department owes no duty to warn trespassers that rattlesnakes may strike, it owes no duty to advise statutory trespassers that tree limbs fall in state parks. The Mirandas did not allege that the Department had so much as an inkling that the branch in question would fall. *See* Tex. Civ. Prac. & Rem Code § 41.001(7); *see also Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 21–22 (Tex.1994) (explaining that gross negligence requires at a minimum that the defendant subjectively "have actual awareness of the extreme risk created by his or her conduct"). Rather, she alleges that the Department is generally aware that tree limbs fall, just as it must know of countless other natural

perils in state parks. Because the Department owes no duty to warn trespassers that forces of nature may cause random harm, I would hold, contrary to the Courts conclusion, that the Mirandas pleading does not invoke the trial courts jurisdiction.

The Mirandas did not allege that the Department was subjectively aware of any specific risk of injury. *See id.* Instead, they alleged:

> Defendant knew of the dangers of its falling tree branches, failed to inspect, failed to prune, failed to alleviate or remove the danger, and consciously and deliberately failed to warn Plaintiffs of the extremely dangerous condition. Plaintiffs paid a campsite rental fee and specifically asked defendant to assign them a safe campsite. Defendant knew that its property contained hidden, dangerous defect (sic) in that its tree branches which have not been inspected or pruned regularly fall. Defendant did not warn Plaintiffs of the hidden danger.
>
> * * *
>
> Plaintiffs would show the court that the occurrence made the basis of this suit and the resulting damages set out below were a direct and proximate result of Defendants negligence and its agents, servants, and officers, both of commission or omission, or both separately and collectively, in failing to properly maintain and inspect the campsite where Plaintiffs were injured, in failing to properly maintain the campsite in a safe condition and/or in failing to exercise ordinary care to protect Plaintiffs from the danger.

The Mirandas' gross negligence allegations stated:

> Plaintiffs would show the court that the occurrences made the basis of this suit and the resulting injuries and damages set out below were a direct and proxi-

mate result of Defendants negligence in failing to make safe the dangerous condition of its campsite trees. Defendant's conduct was willful, wanton, or grossly negligent. Defendant failed to warn or make reasonably safe the dangerous condition of which it was aware and which Plaintiffs were unaware.

We can accept as true the Mirandas' allegation that the Department knew "its tree branches which have not been inspected or pruned regularly fall" and did not warn them about that contingency. That pleading, however, is of neutral value in a suit against the Department, which would owe no duty to warn unless it had actual knowledge that the branch would fall yet nevertheless instructed Maria to camp beneath it. *See id.; see also Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 785 (Tex.2001) (reiterating that gross negligence requires that "the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others."). Indeed, nowhere in their pleadings do the Mirandas assert that the Department was aware of any risk associated with either the tree or the campsite below. Instead, they simply recast allegations of simple negligence into a claim for gross negligence.

We are bound, however, to analyze their claims in light of the policies underlying the recreational use statute. The statute exists to encourage landowners to allow the public to enjoy outdoor recreation on their property by limiting their liability for personal injury. *City of Bellmead v. Torres,* 89 S.W.3d 611, 617 (Tex.2002) (Hankinson, J. dissenting). To accomplish that objective, the Legislature has placed stringent parameters around the duty landowners owe "trespassers." *See* TEX. CIV. PRAC. & REM CODE § 75.002. The duty implicit in the Mirandas pleading, however, would re-

quire the Department to warn all visitors of all perils commonly confronted by human interaction with nature. The scope of that proposed duty—obligating the Department to post warnings about all naturally occurring dangers—would create such an insurmountable practical and economic burden as to frustrate the legislatures intent to encourage landowners to make property available for recreational use.

Without allegations that the Department was aware that the limb would fall and nevertheless instructed Maria to camp below it, the Mirandas have not pleaded facts sufficient to proceed on their claim under the recreational use statute. I do not mean to suggest that merely because the injury is alleged to have resulted from a natural condition, the trial court is *thereby* deprived of jurisdiction. For example, the trial courts jurisdiction would be properly invoked by a pleading that the Department told the plaintiff it was safe to dive into waters the Department knew were so shallow that the dive posed a likelihood of serious injury, and that the plaintiff was severely injured diving in reliance on that assurance. Here, by contrast, the Mirandas did not plead that the Department directed Maria to a campsite knowing that an overhanging tree branch would likely fall on her and cause serious injury.

I understand fully the Courts holding that the Mirandas gave "fair notice" that they were pursuing a gross negligence claim. Fair-notice pleadings, however, must be viewed in this case through the prism of sovereign immunity, which deprives a court of jurisdiction unless the State has expressly waived immunity. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex.1999). The plaintiffs' pleadings against the State must affirmatively establish jurisdiction to overcome the contrary presumption. *Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 587

(Tex.2001)(quoting *Tex. Assn. Bus.*, 852 S.W.2d at 446). The plaintiff must plead facts that, if true, would establish that the claims come within an express waiver of sovereign immunity before the trial court has jurisdiction to proceed. Just as mere reference to the Texas Tort Claims Act is insufficient to confer jurisdiction, *Miller*, 51 S.W.3d at 587, the trial court's jurisdiction is not satisfied by mere notice that the plaintiff is pursuing a gross negligence claim. The Mirandas have failed to affirmatively establish the court's jurisdiction because, even if all of the facts alleged in their pleading were true, those facts would not amount to gross negligence and therefore would not establish a waiver of sovereign immunity under the recreational use statute.

When a plaintiff fails to plead facts establishing jurisdiction, the issue is ordinarily one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002). A court may grant a plea to the jurisdiction without affording an opportunity to amend only when the pleadings "affirmatively negate" the existence of jurisdiction, a circumstance not presented here. *Id.* In this case, however, the trial court overruled the Departments plea to the jurisdiction, concluding implicitly that the Mirandas pleadings were sufficient to confer jurisdiction, and the court of appeals affirmed. Consequently, the Mirandas have never been placed on notice that they must cure the jurisdictional defect. It may well be that the facts will not lend themselves to a pleading that would confer jurisdiction, but we are not equipped to make that determination at this stage of the proceedings.

### III

### Conclusion

We need not and should not inquire into the ultimate merits of this case. I would

remand the cause to the trial court to give the Mirandas an opportunity to amend their petition to plead facts establishing jurisdiction.

Justice BRISTER, joined by Justice O'NEILL and Justice SCHNEIDER, dissenting.

The Legislature has provided that state park visitors are owed the same duty of care as trespassers;[1] thus, the plaintiffs in this case had to prove the Parks and Wildlife Department caused deliberate, wilful, or malicious injury.[2] All members of the Court agree that either their petition or their summary judgment evidence fails to do so, though we disagree which.

The Mirandas alleged Maria suffered severe injuries caused by the Department's gross negligence; specifically, they alleged the Department knew tree limbs could fall, and failed to warn them of that fact or assign them a campsite where none would. I have grave doubts whether such facts could possibly constitute gross negligence—natural conditions usually cannot be unreasonably dangerous (much less wanton),[3] and trespassers do not have to

be warned of what everyone should know.[4] Nor does the Parks Department appear to have a duty to provide campsites safely away from trees;[5] indeed, one has to ask whether anyone would want to use such "parks" if it did.[6]

Faced with what appears to be an insupportable allegation like the gross-negligence pleading here, litigants normally have two options: (1) demand more specific facts by special exception, or (2) demand more specific facts by motion for summary judgment. Instead, the Department filed three motions, including a "plea to the jurisdiction"—the white elephant[7] of current Texas motion practice. By use of this plea, the Department was able to force the trial judge (and ultimately this Court) to make an ad hoc decision whether our jurisdiction should be determined by reference to pleadings or evidence. Because it should be litigants rather than judges making that choice, I respectfully dissent.

Pleas to the jurisdiction are nothing new. In his *Commentaries on the Laws of England*, Blackstone lists them as a category of dilatory pleas that (along with pleas of disability and abatement) deny the

---

1. TEX. CIV. PRAC. & REM.CODE §§ 75.002(c)(2), 75.003(g).

2. *Id.* §§ 75.002(a)(2), 75.003, 101.022, 101.058.

3. *See Johnson County Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 287 (Tex.1996) (holding rock in dirt arena did not create unreasonably dangerous condition).

4. *Cf. County of Cameron v. Brown*, 80 S.W.3d 549, 558 (Tex.2002) (holding darkness caused by failed streetlights was not open and obvious hazard precluding recovery by licensee because it could not be seen from entrance to causeway).

5. *See* TEX. CIV. PRAC. & REM.CODE § 75.002(c)(1) (providing landowners who grant permission for recreational use do not assure that the premises are safe for that purpose).

6. *See Tex. Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 33 (Tex.2002) (holding question of legal duty is question of law requiring balance of factors such as risk, utility, consequences of the duty, and other relevant individual and social interests).

7. The OXFORD ENGLISH DICTIONARY (1989) defines "white elephant" as:

 a. A rare albino variety of elephant which is highly venerated in some Asian countries. b. *fig.* A burdensome or costly possession (from the story that the kings of Siam were accustomed to make a present of one of these animals to courtiers who had rendered themselves obnoxious, in order to ruin the recipient by the cost of its maintenance). Also, an object, scheme, etc., considered to be without use or value.

propriety of the remedy rather than the injury.[8] One hundred years ago, this Court addressed a variety of matters as pleas to the jurisdiction, including objections based on personal jurisdiction,[9] subject-matter jurisdiction,[10] dominant jurisdiction,[11] venue,[12] capacity,[13] and conflict of laws.[14]

Since then, there has been a steady shift away from the common-law forms of pleading to the more specific motion practice set out in the rules of civil procedure. For example, a defendant objecting to venue today must file a motion to transfer that complies with the form requirements of Rule 86 and the deadlines of Rule 87.[15] Similarly, a nonresident objecting to personal jurisdiction must file a special appearance that meets the requirements of Rule 120a.[16] In substance, these motions could still be categorized as "pleas to the jurisdiction;" but in form, they must comply with the current rules of civil procedure.

Case law as well as rule amendments have contributed to the trend away from the common-law plea to the jurisdiction. For example, we have held that a complaint based on dominant jurisdiction in another court must be raised by plea in abatement in the second court, or it is waived.[17] Again, though this complaint could be characterized as a plea to the jurisdiction, a more specific motion and procedure has rendered the common-law term obsolete.

But pleas to the jurisdiction have enjoyed a recent resurgence in the field of governmental immunity. For many years, governmental units were not very particular about the vehicle for asserting immunity, raising it sometimes by—

- general demurrer;[18]
- special demurrer;[19]

---

**8.** 3 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 301–03 (1768).

**9.** *See, e.g., Rice v. Peteet,* 66 Tex. 568, 1 S.W. 657, 657 (1886).

**10.** *See, e.g., McIlhenny Co. v. Todd,* 71 Tex. 400, 9 S.W. 445, 446 (1888) (objecting that amount at issue fell below court's jurisdictional limits); *Juneman v. Franklin,* 67 Tex. 411, 3 S.W. 562, 562 (1887) (objecting that forcible entry and detainer action was not filed in justice court).

**11.** *See, e.g., Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063, 1072 (1926), *disapproved on other grounds, Walker v. Packer,* 827 S.W.2d 833, 842 (Tex.1992); *Grathaus v. Witte,* 72 Tex. 124, 11 S.W. 1032, 1032 (1888).

**12.** *See, e.g., Pecos & N.T. Ry. Co. v. Thompson,* 106 Tex. 456, 167 S.W. 801, 801 (1914); *Baines v. Jemison,* 86 Tex. 118, 23 S.W. 639, 640 (1893); *Watson v. Baker,* 67 Tex. 48, 2 S.W. 375, 375–76 (1886).

**13.** *See, e.g., Brown v. Gay,* 76 Tex. 444, 13 S.W. 472, 472–73 (1890).

**14.** *See, e.g., Tex. & P. Ry. Co. v. Richards,* 68 Tex. 375, 4 S.W. 627, 629 (1887).

**15.** TEX.R. CIV. PROC. 86 (requiring unverified motion that is filed first and states counties of improper, proper, or mandatory venue); TEX.R. CIV. PROC. 87 (requiring 45–days' notice of hearing, 30–days' notice of respondents affidavits, and 7–days' notice of movants affidavits).

**16.** TEX.R. CIV. PROC. 120a (requiring sworn motion that is filed and heard before any other matter, with affidavits served seven days before the hearing).

**17.** *Mower v. Boyer,* 811 S.W.2d 560, 563 n. 2 (Tex.1991); *Wyatt v. Shaw Plumbing Co.,* 760 S.W.2d 245, 247 (Tex.1988).

**18.** *See, e.g., State v. Hale,* 136 Tex. 29, 146 S.W.2d 731, 735 (1941); *Herring v. Houston Nat'l Exch. Bank,* 113 Tex. 264, 253 S.W. 813, 814 (1923); *Stephens v. Tex. & P. Ry. Co.,* 100 Tex. 177, 97 S.W. 309, 310 (1906); *Thomson v. Baker,* 90 Tex. 163, 38 S.W. 21, 22 (1896).

**19.** *See, e.g., Thomson,* 38 S.W. at 22.

- special exception;[20]
- plea to the jurisdiction;[21]
- plea in abatement;[22] or
- summary judgment.[23]

In 1997, the Legislature amended the Civil Practices and Remedies Code to allow interlocutory appeals "from an interlocutory order ... [that] grants or denies a plea to the jurisdiction by a governmental unit."[24] We have held this section must be strictly construed, as it is an exception to the general rule that interlocutory orders are not appealable.[25]

As a result, almost overnight a "plea to the jurisdiction" became the motion of choice for asserting immunity;[26] indeed, some appellate courts have refused to con-

sider any other.[27] This development exalts form over substance. For example, before the Legislature's amendment, one governmental entity unsuccessfully asserted immunity by means of a summary judgment and special exceptions; immediately after the effective date, the entity filed the same objection as a "plea to jurisdiction"—and prevailed.[28]

For several reasons, we should put a stop to this resurgence of common-law pleadings in immunity cases. First, it is fraught with uncertainty. Despite hundreds of haphazardly-numbered rules, only once do the Texas Rules of Civil Procedure mention pleas to the jurisdiction, and then only in a rule regarding permissible parts of an *answer* rather than permissible mo-

---

20. *See, e.g., Duhart v. State*, 610 S.W.2d 740, 741 (Tex.1980); *Dir. of Dep't of Agric. & Env't v. Printing Indus. Ass'n of Tex.*, 600 S.W.2d 264, 265 (Tex.1980); *Stephens*, 97 S.W. at 310.

21. *See, e.g., Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 403 (Tex.1997), *superseded by statute on other grounds as stated in Gen. Servs. Comm'n v. Little–Tex Insulation Co., Inc.*, 39 S.W.3d 591, 593 (Tex.2001); *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 298 (Tex. 1976); *State v. Lain*, 162 Tex. 549, 349 S.W.2d 579, 580 (1961); *Griffin v. Hawn*, 161 Tex. 422, 341 S.W.2d 151, 152 (1960); *Short v. W.T. Carter & Bro.*, 133 Tex. 202, 126 S.W.2d 953, 955 (1938).

22. *See, e.g., Duhart v. State*, 610 S.W.2d 740, 741 (Tex.1980); *Lowe*, 540 S.W.2d at 298; *Griffin v. Hawn*, 161 Tex. 422, 341 S.W.2d 151, 152 (1960); *W.D. Haden Co. v. Dodgen*, 158 Tex. 74, 308 S.W.2d 838, 838 (1958); *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 710 (1945); *Short v. W.T. Carter & Bro.*, 133 Tex. 202, 126 S.W.2d 953, 955 (1938).

23. *See, e.g., Overton Mem'l Hosp. v. McGuire*, 518 S.W.2d 528, 528 (Tex.1975) (per curiam); *Tex. Dept. of Corr. v. Herring*, 513 S.W.2d 6, 7 (Tex.1974).

24. Tex. Civ. Prac. & Rem.Code § 51.014(a)(8).

25. *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 355 (Tex.2001).

26. *See, e.g., Texas Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 852 (Tex. 2002); *Little–Tex Insulation Co., Inc.*, 39 S.W.3d at 594; *McClain v. Univ. of Tex. Health Ctr. at Tyler*, 119 S.W.3d 4, 5 (Tex. App.-Tyler 2000, pet. denied); *Dallas County Cmty. Coll. Dist. v. Bolton*, 990 S.W.2d 465, 466 (Tex.App.-Dallas 1999, no pet.); *Alamo Cmty. Coll. Dist. v. Obayashi Corp.*, 980 S.W.2d 745, 746 (Tex.App.-San Antonio 1998, pet. denied); *Tex. Parks & Wildlife Dept. v. Garrett Place, Inc.*, 972 S.W.2d 140, 142 (Tex. App.-Dallas 1998, no pet.); *Tex. Parks & Wildlife Dep't v. Callaway*, 971 S.W.2d 145, 147 (Tex.App.-Austin 1998, no pet.).

27. *See, e.g., Thomas v. Long*, 97 S.W.3d 300, 302–03 (Tex. App.-Houston [14th Dist.] 2003, pet. granted) (refusing interlocutory appeal of denial of summary judgment based on lack of subject matter jurisdiction as no order granted or denied a plea to the jurisdiction); *Baylor Coll. of Med. v. Tate*, 77 S.W.3d 467, 472 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (refusing interlocutory appeal because trial court's order was summary judgment based on immunity from liability rather than plea to the jurisdiction based on immunity from suit).

28. *Lamar Univ. v. Doe*, 971 S.W.2d 191, 193 (Tex.App.-Beaumont 1998, no pet.).

tions.[29] There is *no* rule—no case and no code—that specifies the form, deadlines, or evidentiary requirements for pleas to the jurisdiction generally.

In *Bland Independent School District v. Blue*,[30] we attempted to bring some order to this resurgence by setting guidelines for handling such pleas. But due to the broad range of issues a plea to the jurisdiction might address, that was not easy to do. As we pointed out in several examples, consideration of some pleas should not go beyond the pleadings, but consideration of others must.[31] When necessary, trial courts must consider evidence relating to the jurisdictional facts, but should not consider evidence relating to the merits,[32] even though the two are sometimes the same. Nor could we be specific about when pleas should be decided, leaving it to the trial court's discretion whether to address the issue at a preliminary hearing or after fuller development of the merits.[33]

The examples given in *Bland* certainly provided more procedural guidance than existed before. But without considering all possible pleas to the jurisdiction, we could not prescribe more definitive rules; until all those disputes come before us, we should probably not try. In the meantime, it will often be unclear *what* the trial court should consider, or *when* it should do so,

until the plea is decided (or perhaps even later on appeal). To some observers, this may appear to be drawing up the rules after the game has been played.[34]

From almost any vantage point, the resurgence of pleas to the jurisdiction creates problems in immunity cases. For governmental entities, it results in unnecessary repetition. In this case, the Parks and Wildlife Department could not be sure whether the trial court would consider evidence necessary, so it filed three motions—a no-evidence motion for summary judgment, a traditional motion for summary judgment, and a plea to the jurisdiction. But as counsel for the Department admitted at the hearing, "all three relate to the same set of issues."

Such repetition is unnecessary for interlocutory review. Nothing in the Civil Practice and Remedies Code suggests the Legislature intended to specify a *form* motions had to take for that purpose, rather than their *substance*. Indeed, the opposite is suggested by the Legislature's selection of a *common-law term* applicable to a broad category of motions, rather than a term pointing to any particular motion in the current rules of civil procedure. It has long been our practice to consider the substance of motions rather than their form;[35] nothing in the legislative history

---

29. Tex.R. Civ. Proc. 85:
 The original answer may consist of motions to transfer venue, *pleas to the jurisdiction,* in abatement, or any other dilatory pleas; of special exceptions, of general denial, and any defense by way of avoidance or estoppel, and it may present a cross-action, which to that extent will place defendant in the attitude of a plaintiff. Matters in avoidance and estoppel may be stated together, or in several special pleas, each presenting a distinct defense, and numbered so as to admit of separate issues to be formed on them.
 (Emphasis added).

30. 34 S.W.3d 547 (Tex.2000).

31. *Id.* at 555.

32. *Id.*

33. *Id.* at 554.

34. *See id.* at 555 (rejecting plaintiffs' demand for remand for full evidentiary hearing because they did not contest evidence at original plea to the jurisdiction hearing).

35. *See, e.g., Speer v. Stover,* 685 S.W.2d 22, 23 (Tex.1985) (per curiam) (considering plea to jurisdiction even though misnamed plea in abatement); *see also* Tex.R. Civ. Proc. 71 (stating "[w]hen a party has mistakenly designat-

suggests the interlocutory appeal statute was intended to be an exception to that rule.

For plaintiffs, the problems created by the resurgence of pleas to the jurisdiction are even more acute. Defendants uncertain about how to present an immunity defense can simply try a little of everything; plaintiffs, by contrast, may lose their case if they guess wrong. In this case, for example, the Mirandas did not attach any evidence to their responses to the various motions. The lower courts agreed they did not need to, but if we hold otherwise, then the Mirandas will learn three years too late that they should have presented evidence at the jurisdictional hearing.

From a trial judge's vantage point, pleas to the jurisdiction create uncertainty, not just about the rules to be applied but about the role of the judge. This case is one of many in which immunity from suit under the Texas Tort Claims Act is coextensive with immunity from liability.[36] As

a result, deciding the jurisdictional question bears a strong resemblance to deciding the merits.

In these circumstances, it is difficult for Texas judges to detect the line between jurisdictional questions they *must* decide before going further and liability questions they *cannot* decide without usurping the function of the jury. Here, the Mirandas convinced the lower courts that whether their pleadings were supported by any evidence was a question solely for the jury. But that is not true if they raised no material facts that could establish a waiver of immunity.[37]

By contrast, returning to standard motions as the vehicles for asserting governmental immunity would clarify what the jurisdictional hearing will be like and simplify many procedural questions. For decades, governmental units have asserted immunity by special exceptions[38] or motions for summary judgment.[39] In many cases (including this one), they still do so today.[40] Relying on standard procedural

---

ed any plea or pleading, the court, if justice so requires, shall treat the plea or pleading as if it had been properly designated"). Some courts themselves appear to use the possible terms for immunity motions interchangeably. *See, e.g., State v. Executive Condos., Inc.*, 673 S.W.2d 330, 331–32 (Tex.App.-Corpus Christi 1984, writ refused n.r.e.) (referring to immunity motion as "plea to the jurisdiction" when it was filed, "plea in abatement" when it was denied, and "motion to dismiss" when it was reversed).

**36.** *See* TEX. CIV. PRAC. & REM.CODE § 101.025(a) (waiving immunity to suit to the extent of liability under chapter 101), § 101.021 (creating governmental liability for specified acts resulting from negligence, premises conditions, and use of property to the extent private persons would be liable).

**37.** *See* TEX.R. CIV. PROC. 166a(c).

**38.** *See, e.g., John G. & Marie Stella Kenedy Mem'l Found. v. Mauro*, 921 S.W.2d 278, 281 (Tex.App.-Corpus Christi 1995, writ denied);

*Tex. Dep't of Corr. v. Winters*, 765 S.W.2d 531, 532 (Tex.App.-Beaumont 1989, writ denied); *Martine v. Bd. of Regents, State Senior Colleges of Tex.*, 578 S.W.2d 465, 469 (Tex.Civ.App.-Tyler 1979, no writ); *Harrison v. Bunnell*, 420 S.W.2d 777, 778 (Tex.Civ.App.-Austin 1967, no writ); *State v. McDonald*, 220 S.W.2d 732, 732 (Tex.Civ.App.-Texarkana 1949, writ refused); *Porter v. Langley*, 155 S.W. 1042, 1043 (Tex.Civ.App.-Dallas 1913, writ refused).

**39.** *See, e.g., Ho v. Univ. of Tex. at Arlington*, 984 S.W.2d 672, 681–83 (Tex.App.-Amarillo 1998, pet. denied); *Russell v. Tex. Dep't of Human Res.*, 746 S.W.2d 510, 513 (Tex.App.-Texarkana 1988, writ denied); *Gay v. State*, 730 S.W.2d 154, 159 (Tex.App.-Amarillo 1987, no writ).

**40.** *See, e.g., Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex.2003) (sovereign immunity asserted by plea to the jurisdiction and motion for summary judgment); *County of Cameron v. Brown*, 80 S.W.3d 549, 553 (Tex.2002) (sovereign immunity asserted

motions would eliminate many questions about deadlines, forms, and evidence. It would make government entities rather than trial judges decide whether the jurisdictional challenge is directed to the plaintiff's pleadings or the underlying facts. If a governmental unit chooses wrong,[41] it may always try again. But the plaintiff is not required to guess what rules or procedures the trial judge might apply.

Returning to pre-resurgence practice would not change the incidence of governmental immunity. As we recently held, if a plea to the jurisdiction is directed only to the plaintiff's pleadings, we construe them in the plaintiff's favor and allow an opportunity to amend unless they affirmatively negate jurisdiction.[42] This is, of course, identical to the rules governing special exceptions.[43] And when governmental entities wish to rely on evidence, any questions of fact that affect jurisdictional issues must be settled by the jury,[44] the same standard that applies to summary judgments.

Nor can it be argued that courts exceed their jurisdiction by requiring immunity pleas to be brought in standard motions according to settled rules of procedure. As we stated shortly after the rules of civil procedure were enacted:

> Since [the trial court] had the power to sustain the demurrers and grant the motions, it had the power to overrule them. The jurisdiction of a court must

be determined, not upon the court's action in deciding the questions presented in a case, but upon the character of the case itself. Jurisdiction is the power to decide, and not merely the power to decide correctly.[45]

Of course, returning to established procedural motions will not remove all difficulties with issues of governmental immunity. Judges of goodwill and intellect will still disagree about whether a particular pleading is sufficiently specific, as JUSTICES JEFFERSON and WAINWRIGHT do here. Governmental units may incur unnecessary discovery costs and delays unless judges agree to hear summary judgment motions on jurisdictional matters as early in the case as they might hear a plea to the jurisdiction. And appellate courts must still distinguish between immunity from suit (as to which an interlocutory appeal will lie) and immunity from liability (as to which it will not).[46] But simplification of our procedures should not be rejected because we cannot simplify everything.

If the Texas Legislature mandated interlocutory review of "pleas in bar asserting limitations" (a development devoutly to be wished against), few would suggest such review was available only for motions entitled "Plea in Bar" instead of the summary judgment or special exception forms that have long been used to raise such issues.[47] We should stop making the as-

---

by plea to the jurisdiction and special exceptions).

41. *See, e.g., Tex. Dep't of Corr. v. Herring*, 513 S.W.2d 6, 9–10 (Tex.1974) (reversing summary judgment based on immunity as plaintiff was not allowed opportunity to replead).

42. *Cameron*, 80 S.W.3d at 555; *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002).

43. *See Brown*, 80 S.W.3d at 559; *Herring*, 513 S.W.2d at 9–10.

44. *See, e.g., Brown*, 80 S.W.3d at 556 (holding foreseeability issue raised by plea to the jurisdiction presented·fact question for jury).

45. *Martin v. Sheppard*, 145 Tex. 639, 201 S.W.2d 810, 812–13 (1947).

46. *See Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638–39 (Tex.1999).

47. *See Baker v. Monsanto Co.*, 111 S.W.3d 158, 159 (Tex.2003) (per·curiam) (asserting limitations by summary judgment); *City of Port Arthur v. Tillman*, 398 S.W.2d 750, 751

sumption that the Legislature intended something different for pleas of governmental immunity.

Accordingly, I would reverse and remand for (1) the Parks and Wildlife Department to specify whether its plea to the jurisdiction is a challenge to the pleadings (by special exception) or the evidence (by summary judgment), (2) the Mirandas to respond in compliance with the rules of civil procedure, and (3) the lower courts to address the governmental immunity issue in accordance with the usual rules governing disposition and review of those motions.

(Tex.1965) (asserting limitations by special exception).