# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00055-CV

**L.C., Appellant**

**v.**

**The Texas Department of Family and Protective Services, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
## NO. D-1-GN-06-000484, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## C O N C U R R I N G   O P I N I O N

I concur in the judgment affirming the district court's judgment dismissing L.C.'s claims for want of subject-matter jurisdiction, but write separately because I do not join the majority's analysis in all respects. I also join in Justice Waldrop's concurrence emphasizing the "suspect" nature of the Department of Family and Protective Service's (DFPS's) procedures governing the child-abuse registry and urging the policymaking branches to examine this Star Chamber-like framework.

L.C. cannot obtain judicial review of DFPS's determination of "reason to believe" that she is a perpetrator of "child abuse" whose name must be placed in the central registry unless a statute grants her that right or one or more of her constitutional rights are violated. *See Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 172 (Tex. 2004); *Continental Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex. 2000).

L.C. argues on appeal that she is entitled to judicial review under the Administrative Procedures Act because DFPS's decision to place her name and "designated perpetrator" status in the registry determined her "legal rights, duties, or privileges . . . after an opportunity for an adjudicative hearing" and, thus, was "a final decision in a contested case" subject to judicial review. *See* Tex. Gov't Code Ann. §§ 2001.003(1), .171 (West 2008). L.C. further asserts on appeal that she has pled a valid "procedural" due-process claim predicated on infringements of her liberty and property interests in pursuing her chosen profession in podiatric medicine and her liberty interests in parenting her children. *See Paul v. Davis*, 424 U.S. 693, 711 (1976) (due-process claim cannot be predicated on reputational harm alone, but requires that "a right or status previously recognized by state law was distinctly altered or extinguished").

Implicit in many of L.C.'s arguments is that DFPS's decision to place her name and findings in its child-abuse registry *in itself* implicates protected liberty or property interests or determines her "legal rights, duties, or privileges." However, L.C. does not point to any authority for that proposition, and I agree with the majority that her claims must rest instead on some alleged further consequence of the fact that the information is in the registry.[1]

---

[1] In this respect, I agree with the majority that "[s]uch registries are constitutional." *L.C. v. Texas Dep't of Family & Protective Servs.*, No. 03-07-00055-CV, slip. op. at 5 (Tex. App.—Austin Nov. __, 2009, no pet. h.) (mem. op.). Similarly, as the majority observes, L.C.'s complaint that DFPS failed to follow its own internal procedures in determining to place her name in its child-abuse registry would not in itself state a due-process violation because she has no protected liberty or property interest in the rules themselves. *See Alford v. City of Dallas*, 738 S.W.2d 312, 316 (Tex. App.—Dallas 1987, no writ).

In her live petition, construed liberally,[2] the sole facts L.C. alleges concerning any consequences of her status in the child-abuse registry are that the information "will adversely affect Plaintiff's ability to remain authorized and credentialed to practice medicine in hospitals, or be authorized and credentialed by HMOs and PPOs," and thereby "has harmed Plaintiff and has hindered the liberty interest and property interest which the State and the United States Constitutions grant to Plaintiff in her profession by placing at risk Plaintiff's practice as a physician."[3] L.C. also pleads facts and attaches evidence to the effect that she is required to disclose her status on the registry through the credentialing process. L.C. alleges that the Texas Standard Credentialing Application—a form promulgated by the Texas Department of Insurance pursuant to statutory mandate[4]—requires her to self-report the findings and to sign an authorization permitting disclosure of the information to third parties. L.C. attaches a copy of the application to her petition. As L.C. suggests, it contains an authorization permitting "any third party, including, but not limited to, . . . agencies" to release "information, including otherwise privileged or confidential information." The application also contains questions inquiring as to whether the applicant has "ever been the subject of an investigation by any . . . licensing agency" and whether he or she has "ever been sanctioned . . . by any federal or state regulatory agency." DFPS did not present evidence to negate these facts.

---

[2] *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

[3] Thus, contrary to L.C.'s appellate briefing, L.C.'s live petition contains no allegations regarding any impact of her status on the child-abuse registry on her liberty interests in parenting her children.

[4] *See* Tex. Ins. Code Ann. § 1452.052 (West 2009).

3

L.C.'s allegations that her status on the child-abuse registry, once disclosed through the credentialing process, "will adversely affect Plaintiff's ability to remain authorized and credentialed to practice medicine in hospitals, or be authorized and credentialed by HMOs and PPOs," and "has . . . plac[ed] at risk Plaintiff's practice as a physician" fall short of stating that the State has infringed a cognizable liberty or property interest. *See Siegert v. Gilley*, 500 U.S. 226, 227-29, 233-34 (1991); *Paul*, 424 U.S. at 708-09. Without more, L.C. has alleged only that her future employment prospects will be diminished by the deleterious effect of the "child abuser" stigma, not that the State has also caused legal consequences or tangible burdens to attach to her registry status. *Cf. Humphries v. County of Los Angeles*, 554 F.3d 1170, 1185-92 (9th Cir. 2009). Nor has L.C., who has already amended her pleadings once following the hearing on DFPS's plea to the jurisdiction, suggested how she might further amend her pleadings to cure the defect. *See Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839-40 (Tex. 2007).

For these reasons, I join in the majority's judgment affirming the district court's judgment of dismissal.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Waldrop

Filed: November 13, 2009

4