# Supreme Court of Texas

---

No. 21-0966

---

Pepper Lawson Horizon International Group, LLC,

*Petitioner*,

v.

Texas Southern University,

*Respondent*

---

On Petition for Review from the
Court of Appeals for the First District of Texas

---

**PER CURIAM**

This interlocutory appeal involves the application of a statutory immunity waiver in a suit alleging breach of a contract to construct university housing. *See* TEX. CIV. PRAC. & REM. CODE § 114.003. The trial court held that the university was not immune from suit, but the court of appeals reversed and rendered judgment dismissing the contract claims for want of subject-matter jurisdiction. We reverse and remand to the trial court.

In 2014, Texas Southern University (TSU) executed a contract naming "Pepper-Lawson/Horizon International Group" as the "Contractor" on a project to construct student housing. Representatives

of Pepper Lawson Construction and Horizon International Group each signed the contract as part of a joint venture subsequently formed as Pepper Lawson Horizon International Group, LLC (PLH). PLH sued TSU, alleging that, as recounted below, the university defaulted on its payment obligations under the construction contract.

The construction contract required substantial project completion by July 1, 2015, and final completion by August 31, 2015, subject to justified time extensions and equitable price adjustments for certain types of delays. *See infra* note 1. PLH did not complete the project until February 2016. On completion, PLH invoiced TSU for $3,320,605—the remaining "balance due" under the contract, as adjusted by approved change orders—plus $3,677,580 for "additional direct costs" PLH had allegedly incurred due to "excusable delays."

TSU refused to pay the adjusted contract balance because the project was completed 155 days late and a liquidated-penalty clause in the construction contract entitles TSU to deduct $20,000 per day for untimeliness. TSU declined to pay the additional direct costs based on Section 9.7 of the construction contract, which states, "Contractor has no claim for monetary damages for delay or hindrances to the work from any cause, including without limitation any act or omission of [TSU]."

After completing a contractually required dispute-resolution process, PLH sued TSU for breach of contract. PLH asserted that (1) TSU failed to grant contractually required extensions of the completion deadline for excusable delays, as provided in contract

2

Sections 9.6.2.2 and 9.6.3;[1] (2) the liquidated-penalty clause did not preclude recovery of the amount due under the contract, including the excusable-delay costs, because TSU should have extended the completion deadline, which would have made the February completion date timely; and (3) PLH was not seeking delay damages under contract

---

[1] "Excusable Delay" is defined in Section 9.6.2.2 of the contract:

> Excusable Delay. Contractor is entitled to an equitable adjustment of the Contract Time, issued via change order, for delays caused by the following: [1] Errors, omissions and imperfections in design . . . [2] Unanticipated physical conditions at the Site, which A/E [Architect/Engineer] corrects by means of changes to the Drawings and Specifications or for which ODR [Owner's Designated Representative] directs changes in the Work identified in the Contract Documents. [3] Changes in the Work that effect [sic] activities identified in Contractor[']s schedule as "critical" to completion of the entire Work, if such changes are ordered by ODR or recommended by A/E and ordered by ODR.  [4] Suspension of Work for unexpected natural events (sometimes called "acts of God"), civil unrest, strikes or other events which are not within the reasonable control of Contractor.  [5] Suspension of Work for convenience of ODR, which prevents Contractor from completing the Work within the Contract Time.

As provided in Section 9.6.3 of the contract:

> Contractor[']s relief in the event of such delays is the time impact to the critical path as determined by analysis of Contractor[']s schedule.  *In the event that Contractor incurs additional direct costs because of the excusable delays* other than [Suspension of Work for unexpected natural events (sometimes called 'acts of God'), civil unrest, strikes or other events which are not within the reasonable control of Contractor] *and within the reasonable control of [TSU], the Contract price and Contract Time are to be equitably adjusted by [TSU]* pursuant to the provisions of Article 11.

(Emphases added.)

3

Section 9.7, but rather, an equitable adjustment of the project-completion deadline and the contract price, as authorized under Section 9.6.3 for excusable delays.

PLH alleged that various issues delayed project completion and increased PLH's costs, including delays caused by TSU or within TSU's reasonable control. Among other things, PLH discovered that "undisclosed underground obstructions" from a previous building—a pool, basement walls, and piers—remained buried under the worksite. While TSU agreed to a cost increase to remove the obstructions, it denied PLH's request for additional time to perform the work under contract Sections 9.6.2.2 and 9.6.3. According to PLH, that delay had the added effect of pushing construction into Texas's "wet season," which had a record rainfall that further delayed construction. PLH requested a 67-day extension to account for rain days under a contract provision requiring TSU to extend the completion deadline for excusable delays and certain "weather days,"[2] but the university only granted a 21-day extension. Finally, PLH alleged that TSU agreed to supply the project with permanent power but missed the agreed deadline by 192 days.

---

[2] Section 9.6.2 of the contract provides for an extension of time on the following terms: "When a delay defined herein as excusable prevents Contractor from completing the Work within the Contract Time, Contractor is entitled to an extension of time. [TSU] will make an equitable adjustment and extend the number of days lost because of excusable delay or Weather Days, as measured by Contractor[']s progress schedule."

Section 9.6.2.1, in turn, defines a "Weather Day" as "a day on which Contractor[']s current schedule indicates Work is to be done, and on which inclement weather and related site conditions prevent Contractor from performing seven (7) continuous hours of Work between the hours of 7:00 a.m. and 6:00 p.m. Weather days are excusable delays."

4

Because of the power delay, PLH requested a commensurate deadline extension under the contract's excusable-delay provision, but TSU refused to grant any additional time.

Along with sums allegedly due and owing under the construction contract, PLH prayed for interest and attorney's fees under the Texas Prompt Payment Act (PPA) because the construction contract expressly required TSU to comply with that statute[3] and because TSU did not pay PLH's final invoice within the statutorily mandated 30-day period. *See* TEX. GOV'T CODE § 2251.021(a).

TSU generally denied PLH's allegations and asserted sovereign immunity to suit, among other defenses. Although PLH's pleadings expressly invoked the immunity waiver in Section 114.003 of the Texas Civil Practice and Remedies Code, TSU filed a plea to the jurisdiction, asserting Section 114.003 was inapplicable because PLH failed to plead a claim covered by the waiver provision.

Section 114.003 waives immunity to suit against "[a] state agency that . . . enters into a contract subject to [Chapter 114]" but only "for the purpose of adjudicating a claim for breach of an express provision of the contract" and "subject to [Chapter 114's] terms and conditions[.]" TEX. CIV. PRAC. & REM. CODE § 114.003. Chapter 114 "applies only to a claim for breach" of certain contracts, including "a written contract for . . . construction services or for materials related to . . . construction

---

[3] Section 6.4.2 of the contract references the PPA as follows: "Provided that Contractor's payment applications are submitted by the last day of each month and approved by [TSU], [TSU] shall pay Contractor the approved amount in accordance with Chapter 2251 of the *Texas Government Code* [the PPA]."

5

services brought by a party to the written contract." *Id.* § 114.002. The amount in controversy must be at least $250,000, but the awardable damages are limited to:

> (1) the balance due and owed by the state agency under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration if the contract expressly provides for that compensation;
>
> (2) the amount owed for written change orders;
>
> (3) reasonable and necessary attorney's fees based on an hourly rate that are equitable and just if the contract expressly provides that recovery of attorney's fees is available to all parties to the contract; and
>
> (4) interest at the rate specified by the contract or, if a rate is not specified, the rate for postjudgment interest under Section 304.003(c), Finance Code, but not to exceed 10 percent.

*Id.* §§ 114.002, .004(a).

Despite Chapter 114's clear and unambiguous waiver of immunity for construction-contract suits like this one, TSU claimed it retained immunity to suit because (1) PLH failed to plead facts showing "breach of an express provision of the contract"; (2) PLH failed to point to a contractual provision expressly allowing recovery of damages for owner-caused delays or attorney's fees; (3) PLH's "delay claim" for alleged underground obstructions was moot because PLH executed a change order that resolved those claims according to the procedure provided by the construction contract; (4) PLH's weather-delay claim was moot because the parties executed a change order for the disputed

6

weather days that resolved those claims according to the procedure provided by the construction contract; (5) PLH could not recover enhanced interest rates and attorney's fees under the PPA because that statute does not clearly and unambiguously waive sovereign immunity; and (6) PLH failed to identify a separate immunity waiver that would allow it to recover interest and fees under the PPA. TSU's mootness arguments hinged on contract provisions making the Contractor's signature on change orders conclusive as to the agreed contract price and time adjustments.[4] To support the plea, TSU attached the contract and change orders.

In response, PLH asserted that its petition sufficiently invoked Section 114.003's immunity waiver by pleading the express contract provisions TSU allegedly breached and detailing how TSU defaulted on its obligations under those provisions.

The trial court denied TSU's plea, but on interlocutory appeal, the court of appeals reversed and rendered judgment dismissing the suit. 634 S.W.3d 428, 440 (Tex. App.—Houston [1st Dist.] 2021). The court held that PLH "failed to show, as a matter of law," that Chapter 114 waived immunity because "no express contract provision required TSU to perform as PLH alleged in its second amended petition." The court further held that TSU was immune from suit for interest and attorney's

---

[4] Uniform General Conditions Article 11.1, incorporated into the construction contract, provides: "A Change Order signed by Contractor indicates his agreement therewith, including the adjustment in the Contract Sum and/or the Contract Time." Article 11.10 further makes an executed Change Order conclusive: "Upon execution of a Change order . . . by Owner, Contractor and A/E, all costs and time issues regarding that change are final and not subject to adjustment."

7

fees under the PPA because that statute contains no immunity waiver and PLH failed to identify any other waiver of immunity applicable to those claims. *Id.* at 436, 440. Having found no waiver of immunity under Chapter 114, the court of appeals did not consider whether TSU's contractual agreement to abide by the PPA—"[TSU] shall pay Contractor the approved amount in accordance with Chapter 2251 of the *Texas Government Code*"—made TSU amenable to suit for attorney's fees and interest as provided in the PPA under the awardable damages categories in Section 114.004(a)(3) and (a)(4). *See id.* at 435-36.

PLH's petition for review assails the court of appeals' analysis on both the contract and prompt-pay claims, asserting that the court misapplied the standard of review articulated in *Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-28 (Tex. 2004). In response, TSU presents a new issue not raised in the courts below: that PLH lacks "standing" to claim Chapter 114's immunity waiver because it was not "a party to the written contract." *See* TEX. CIV. PRAC. & REM. CODE § 114.002. We agree with PLH that the court of appeals erred in its analysis of the issues before it, but for the reasons explained below, we do not substantively address what the State characterizes as a "standing" issue.

Sovereign immunity protects various divisions of state government, including state universities, from lawsuits for damages unless the Constitution or a legislative enactment waives that immunity. *Wasson Ints., Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 433 (Tex. 2016); *see Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320,

8

323-24 (Tex. 2006) ("The State's sovereign immunity extends to . . . [state] universities."). A statute does not waive sovereign immunity absent clear and unambiguous language to that effect. TEX. GOV'T CODE § 311.034; *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 838 (Tex. 2010).

Section 114.003 clearly and unambiguously waives immunity from suit for breach-of-contract claims against a "state agency," including "a university system or a system of higher education," that has entered into a written contract for construction services or materials. TEX. CIV. PRAC. & REM. CODE §§ 114.001(3), .002, .003. But at the same time, the statute cabins the waiver to "a claim for breach of an express provision of the contract." *Id.* § 114.003. The immunity waiver is also "subject to [Chapter 114's] terms and conditions," *id.*, and under a similarly worded waiver provision applicable to local governmental entities, we have held that such language waives immunity from suit only to the extent the plaintiff seeks categories of damages that are recoverable under the statute, *cf. Zachry Constr. Corp. v. Port of Hous. Auth. of Harris Cnty.*, 449 S.W.3d 98, 107-10 (Tex. 2014) (construing TEX. LOC. GOV'T CODE §§ 271.151–.160). Here, the issue is not whether a clear and unambiguous immunity waiver exists but whether PLH's breach-of-contract allegations and damages claims fall within the scope of the express statutory waiver.

Because immunity from suit implicates subject-matter jurisdiction, a defendant may properly raise the defense in a plea to the

9

jurisdiction.[5] *Miranda*, 133 S.W.3d at 225-26. In considering the plea's merits, the court must determine whether the plaintiff has met its burden to allege facts affirmatively showing the trial court's jurisdiction, but the court "may [also] consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). But there is an important caveat: a plea to the jurisdiction does not authorize an inquiry so far into the substance of the claims that plaintiffs would be required to put on their case to establish jurisdiction. *Id.* at 554. The court of appeals erred in this regard.

Pleading a claim under Chapter 114, PLH alleged that TSU (1) entered a written contract with PLH for construction services, (2) did not timely pay the balance owed under the contract, and (3) did not equitably adjust the contract price and time as contractually required for excusable delays. PLH further identified the specific contract provisions it contends TSU breached—Sections 9.6.2.2, 9.6.3, and 9.9.4.2. TSU's jurisdictional plea argued that PLH could not prevail on its claims under the construction contract and change orders, which were attached to its plea.

When analyzing TSU's jurisdictional challenge, the court of appeals conflated statutory-construction rules with contract interpretation. In doing so, the court required PLH to show that "the parties' contract unambiguously waives TSU's immunity" and "show

_____

[5] While sovereign immunity implicates subject-matter jurisdiction, the contours of the two are not co-extensive, and "sovereign immunity does not equate to a lack of subject-matter jurisdiction for all purposes." *Gulf Coast Ctr. v. Curry*, 658 S.W.3d 281, 284 n.2 (Tex. 2022).

10

breach of an express provision of the parties' contract." 634 S.W.3d at 433, 439. In short, TSU brought forward a host of contract defenses pertaining to the merits of PLH's claims, and the court of appeals required PLH to prove its case.

But PLH was not required to prove that "the parties' contract unambiguously waives TSU's immunity from suit for PLH's breach-of-contract claim," as the court of appeals held. *Id.* at 439. PLH only had to establish that Chapter 114, not the contract, unambiguously waived immunity. *See* TEX. GOV'T CODE § 311.034; *Kirby Lake Dev.*, 320 S.W.3d at 838. Because sovereign immunity is unambiguously waived for Chapter 114 claims, PLH's burden was to allege facts affirmatively demonstrating the court's jurisdiction to hear the cause, and it did. *See Miranda*, 133 S.W.3d at 226-27. To the extent the jurisdictional inquiry implicated the merits of PLH's cause of action, TSU failed to conclusively establish that (1) it did not breach an express provision of the contract when it refused to equitably adjust the contract time and price for "additional costs" incurred for PLH's alleged excusable delays that were within TSU's "reasonable control" and (2) PLH did not follow the procedures triggering TSU's obligation to pay. *See id.* at 227.

The court of appeals improperly held that the contract did not obligate TSU to equitably adjust the time and price based on excusable delays because PLH failed to allege or prove that it met the conditions precedent for requesting a time extension. 634 S.W.3d at 434. PLH generally pleaded that it had satisfied all conditions precedent, and TSU neither specifically denied that PLH satisfied the payment conditions nor challenged the facts that were actually pleaded.

11

Plaintiffs may generally plead that all conditions precedent have been performed or have occurred, and when they have done so, they need not prove satisfaction of any conditions the opposing party has not specifically denied. *See* TEX. R. CIV. P. 54. Because TSU did not specifically deny that PLH satisfied all conditions precedent, the court of appeals erred in holding that PLH failed to plead a cognizable Chapter 114 claim based on any failure to satisfy contractual conditions precedent to requesting a time extension.

In its second issue, PLH challenges the court of appeals' disposition on its PPA claims for attorney's fees and interest. Having erroneously found no waiver of immunity under Chapter 114, the court of appeals did not consider whether PLH could recover PPA penalty interest and attorney's fees through Chapter 114's waiver provision. We hold that it can because (1) the construction contract expressly incorporates and requires compliance with the PPA; (2) the categories of damages sought under the PPA are included in the categories of damages awardable under Chapter 114; and (3) Section 114.003 is a clear and unambiguous waiver of immunity as to the awardable categories of damages.[6] *See* TEX. CIV. PRAC. & REM. CODE § 114.004(a)(3), (4); *City of Houston v. Williams*, 353 S.W.3d 128, 144 (Tex. 2011) (parties may incorporate a statute into their contract by reference).

---

[6] Because we resolve the waiver issue based on the contract's language and the awardable damages under Section 114.004, we do not consider PLH's argument that the PPA would be rendered meaningless if it were not construed as a self-executing waiver of sovereign immunity.

12

In a suit to which Chapter 114 applies, Section 114.004 authorizes an award of "reasonable and necessary attorney's fees . . . if the contract expressly provides that recovery of attorney's fees is available to all parties to the contract" and "interest at the rate specified by the contract[.]" TEX. CIV. PRAC. & REM. CODE § 114.004(a)(3), (4). Chapter 114 waives immunity for both categories of damages in this case because the PPA through incorporation into the construction contract (1) provides a formula to calculate the interest rate for untimely payments and (2) makes attorney's fees available to all parties by providing that in a "judicial action to collect an invoice payment or interest due under this chapter, the opposing party, which may be the governmental entity or vendor, shall pay the reasonable attorney fees of the prevailing party." TEX. GOV'T CODE §§ 2251.025, .043.

Finally, we address TSU's new argument that PLH cannot claim Section 114.003's immunity waiver because it lacks "standing" to invoke the waiver. Chapter 114 applies "only to a claim for breach of a written contract . . . *brought by a party to the written contract*[.]" *See* TEX. CIV. PRAC. & REM. CODE § 114.002 (emphasis added). TSU maintains that PLH is not "a party to" the construction contract because PLH did not exist when the contract was executed, is not named in the contract, and is not a contract signatory. Rather, the contract named "Pepper-Lawson/Horizon International Group" as the Contractor and representatives of "Pepper Lawson Construction" and "Horizon International Group" signed the contract.

We need not consider whether the State has properly framed this inquiry as involving a question about PLH's standing. *See Pike v. Tex.*

13

*EMC Mgmt., LLC*, 610 S.W.3d 763, 774, 778 (Tex. 2020) ("[A] plaintiff does not lack standing in its proper, jurisdictional sense simply because he cannot prevail on the merits of his claim; he lacks standing [when] his claim of injury is too slight for a court to afford redress." (internal citations omitted)). Even if the issue implicates subject-matter jurisdiction, *see* TEX. GOV'T CODE § 311.034, we decline to consider it for the first time on appeal because TSU has not conclusively established either that PLH had a full and fair opportunity to develop the record in the trial court and amend their pleadings or that it would be unable to do so on remand, *see Rusk State Hosp. v. Black*, 392 S.W.3d 88, 100 (Tex. 2012).

Accordingly, without hearing oral argument, we grant PLH's petition for review, reverse the court of appeals' judgment, and remand to the trial court for further proceedings. *See* TEX. R. APP. P. 59.1.

**OPINION DELIVERED:** May 19, 2023

14