

# NUMBER 13-23-00406-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ROBSTOWN INDEPENDENT
SCHOOL DISTRICT,                                                    Appellant,

v.

JESUS ALEJANDRO,                                                   Appellee.

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 3
## OF NUECES COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Fonseca**
**Memorandum Opinion by Justice Fonseca**

In this appeal, appellant Robstown Independent School District (RISD) contends that the trial court erred by denying its plea to the jurisdiction seeking to dismiss a breach of contract suit filed by appellee Jesus Alejandro. By one issue, RISD argues that Alejandro failed to establish a waiver of its governmental immunity to suit because the

contract at issue was not "properly executed" by RISD under Chapter 271 of the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 271.151(2). We affirm.

## I. BACKGROUND

Alejandro began providing business consulting services to RISD in July of 2012. On October 16, 2012, Alejandro entered into a "Consulting Agreement" under which he agreed to "[d]irect and manage the operation of all financial and business affairs of [RISD] including accounting, payroll, purchasing, risk management[,] and budget" from November 1, 2012, to January 31, 2013, for total compensation of $28,500, payable semi-monthly. The agreement stated that the consulting relationship would terminate upon the expiration of the contractual term, upon Alejandro's death or disability, or upon written notice of his termination for "just cause,"[1] at which point Alejandro would be entitled only to the "compensation earned as of the date of termination." If the relationship was terminated for any other reason, Alejandro would be entitled to receive the full term's compensation. The agreement was signed by Alejandro and RISD's then-superintendent Leobardo Cano.

On November 21, 2012, RISD's acting superintendent Roel Lara[2] notified

---

[1] The agreement defined "just cause" as

(a) the failure or inability for any reason (other than illness or incapacity) of [Alejandro] to devote the required time set forth in Agreement to the business of [RISD]; (b) the commission by [Alejandro] of any act involving willful misconduct, moral turpitude or gross negligence, or the commission by [Alejandro] of any act or the suffering by [Alejandro] incapable of performing his duties under this Agreement [sic]; (c) any material breach by [Alejandro] of any of the terms of, or the failure to perform any covenant contained in this Agreement; or (d) a material violation by [Alejandro] of policies established by [RISD] with respect to the operation of its business [] affairs.

[2] As set out by the Austin Court of Appeals in an unrelated case, Cano was placed on paid administrative leave on November 6, 2012, and was terminated in December of 2012, due to various misconduct findings. *See Morath v. Cano*, No. 03-15-00799-CV, 2017 WL 3585252, at \*1 (Tex. App.—Austin Aug. 17, 2017, no pet.) (mem. op.).

Alejandro that his consulting services would "no longer be needed." In response, Alejandro sent a letter to Lara claiming that his termination constituted a breach of the consulting agreement and requesting the remainder of the $28,500 payment. Lara replied, explaining in a November 21, 2012 letter that RISD would not pay Alejandro the full amount because the October consulting agreement "violated Board Policy CH(Local) in effect at that time" and was therefore unenforceable. Specifically, Lara claimed that Alejandro had originally agreed to provide consulting services to RISD in July of 2012 for $500 per day; that RISD had already paid Alejandro over $40,000 under the July arrangement as of October 25; and that the "addition of another $28,500 caused the total contractual obligation to exceed" the superintendent's authority to enter into contracts without board approval.[3] Lara's letter also stated that, even if the agreement was valid, RISD "would easily be able to substantiate just cause as the grounds for termination."

Alejandro then filed this suit against RISD. In his live petition filed on September 7, 2022, Alejandro alleged that the October 16, 2012 consulting agreement was valid because Cano was authorized to enter into the contract on RISD's behalf. He further alleged that he did not commit any act which would give rise to "just cause" for his termination. He claimed that RISD's governmental immunity to suit was waived under Texas Local Government Code § 271.153, and he requested $22,500 in actual damages along with attorney's fees and interest. RISD filed a plea to the jurisdiction arguing that it retained governmental immunity to Alejandro's suit for the reasons set forth in Lara's

---

[3] Cano's termination was based in part on a finding by RISD that he violated board policy by "committing [RISD] to two contracts [with Alejandro] without obtaining required Board approval." *Id.* at *2 & n.4. The Austin Court of Appeals did not analyze or evaluate this finding, but rather based its decision on other grounds. *See id.* at *2–5 (finding that a contractual "Early Termination" provision did not control and, on that basis, reinstating the Commissioner of Education's order affirming the denial of Cano's grievance).

3

letter—i.e., because the October consulting agreement "was outside the authority of the superintendent to execute without approval from RISD's Board of Trustees." RISD attached a copy of a memorandum dated July 9, 2012, signed by Cano, in which Alejandro agreed to "[r]eview all existing budget data and prepare and develop the 2012–2013 RISD Budget and related matters" for compensation of $500 per day. RISD also attached an affidavit by its human resources director stating in part that "[f]or the period through his last day on November 15, 2012, [Alejandro] was paid a total of $47,750.00." Alejandro filed a response to the plea, and RISD filed a reply.

After a hearing, the trial court denied the plea by order dated August 23, 2023, and this accelerated interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (providing for interlocutory appeal of an order denying a plea to the jurisdiction by a governmental unit); TEX. GOV'T CODE ANN. § 101.001(3)(B) (defining "governmental unit" to include a school district).[4]

## II.    PLEA TO THE JURISDICTION

### A.    Standard of Review

"A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep.*

---

[4] Following the filing of briefs in this appeal, RISD notified this Court that Alejandro died on May 10, 2024, and it asserted that "this Court may not proceed with the appeal without questioning whether those purporting to represent the deceased party have the authority to do so." However, because Alejandro's counsel filed his brief prior to Alejandro's death, there is no dispute that counsel had the authority to represent Alejandro for purposes of this appeal. Accordingly, we proceed to adjudicate the appeal as if Alejandro were still alive. *See* TEX. R. APP. P. 7.1(a)(1) ("If a party to a civil case dies after the trial court renders judgment but before the case has been finally disposed of on appeal, the appeal may be perfected, and the appellate court will proceed to adjudicate the appeal as if all parties were alive."); *cf. Murphy v. Murphy*, 21 S.W.3d 797, 798 (Tex. App.—Houston [1st Dist.] 2000, order) (noting that an appellant died and, because her attorneys joined in a motion to dispose of the appeal *after* her death, ordering that her attorneys provide documentation showing (1) their authority to represent the appellant's estate, and (2) that the estate representative adopted or ratified the motion).

4

*Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction over a pleaded cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Because subject matter jurisdiction is a question of law, we review the trial court's ruling on a plea to the jurisdiction de novo. *Id.*

A plaintiff has the initial burden to plead facts affirmatively demonstrating the trial court's jurisdiction. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). "When a defendant challenges jurisdiction, a court 'is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised.'" *Id.* (quoting *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555); *see Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022). This is true even when the jurisdictional issue intertwines with the merits of the case. *Town of Shady Shores*, 590 S.W.3d at 550.

When jurisdictional facts are challenged, our standard of review mirrors that of a summary judgment. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 805 (Tex. 2018). We must take as true all evidence favorable to the nonmovant, indulge every reasonable inference and resolve any doubts in the nonmovant's favor, and disregard contrary evidence if a reasonable factfinder could do so. *See id.* at 771; *Miranda*, 133 S.W.3d at 228. If the evidence raises a fact issue regarding jurisdiction, the plea cannot be granted, and a factfinder must resolve the issue. *Miranda*, 133 S.W.3d at 227–28. On the other hand, if the evidence is undisputed or fails to raise a fact issue, the plea must be determined as a matter of law. *Id.* at 228; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012).

**B.     Applicable Law**

**1.     Sovereign Immunity**

The doctrine of sovereign immunity holds that "no state can be sued in her own courts without her consent, and then only in the manner indicated by that consent." *Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006) (citing *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847)); *see Nevada v. Hall*, 440 U.S. 410, 414 (1979) ("The immunity of a truly independent sovereign from suit in its own courts has been enjoyed as a matter of absolute right for centuries. Only the sovereign's own consent could qualify the absolute character of that immunity."). Thus, unless waived by the legislature, sovereign immunity deprives a Texas court of subject matter jurisdiction over any lawsuit against a governmental unit such as RISD. *See El Paso Educ. Initiative, Inc. v. Amex Props., LLC*, 602 S.W.3d 521, 526 (Tex. 2020); *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011); *see also* TEX. GOV'T CODE ANN. § 311.034 ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.").

**2.     Local Government Code Chapter 271**

Chapter 271, subchapter I of the Texas Local Government Code clearly and unambiguously waives sovereign immunity for certain contract claims against local governmental entities. *See* TEX. LOC. GOV'T CODE ANN. §§ 271.151–.160. In particular, § 271.152 provides that a local governmental entity "that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for

6

breach of the contract, subject to the terms and conditions of this subchapter." *Id.* § 271.152. As relevant here, a "contract subject to this subchapter" is "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id.* § 271.151(2)(A).

## C.    Analysis

The issue in this case is whether the contract at issue was "properly executed on behalf" of RISD as required by Chapter 271. *See id.* "[J]ust as a government official cannot bind the government to a contract based on apparent authority, an agent acting on behalf of a [governmental unit] cannot bind it in a way that exceeds its statutory grant of authority to enter into contracts." *El Paso Educ. Initiative*, 602 S.W.3d at 533 (citing *State ex rel. Dep't of Crim. Just. v. VitaPro Foods, Inc.*, 8 S.W.3d 316, 322 (Tex. 1999) ("Only persons having actual authority to act on behalf of the State can bind the State in contract.")). Thus, a contract is "properly executed" only "when it is executed in accord with the statutes and regulations prescribing that authority." *Id.* at 532 (noting that "proper" means "[a]ppropriate, suitable, right, fit, or correct; according to the rules").

Under the education code, the board of trustees of an independent school district "may enter into contracts as authorized under this code or other law and delegate contractual authority to the superintendent as appropriate." TEX. EDUC. CODE. ANN. § 11.1511(c)(4). At the time Alejandro began providing services to RISD, the district's local purchasing and acquisition policy (referred to as "CH(Local)") stated:

> The Board delegates to the Superintendent or designee the authority to make budgeted purchases for goods or services. However, any single, budgeted purchase of goods or services that costs $10,000.00 or more, regardless of whether the goods or services are competitively purchased,

shall require Board approval before a transaction may take place. Prior to the October 16, 2012 consulting agreement, the policy was amended to state that "any single, budgeted purchase of goods or services that costs $50,000.00 or more" required board approval.

In its plea and on appeal, RISD argued that Cano violated this policy by executing the October 16, 2012 agreement because "the total contractual obligation was more than $50,000 in the aggregate for a 12-month period," and the agreement was not approved by the board. Thus, RISD asserts that the agreement was not "properly executed" on its behalf and does not support a waiver of immunity.

This assertion depends on RISD's contention that the amounts paid and due under the July and October agreements should be aggregated for purposes of determining Cano's authority. In support thereof, RISD points to sections of the education and government codes which it claims demonstrate that "governmental employees/officers are precluded from breaking what would ordinarily be a single contract into multiple agreements to avoid a particular spending limit." *See* TEX. EDUC. CODE ANN. § 44.031(a), (b) (requiring "all school district contracts for the purchase of goods and services, except contracts for the purchase of produce or vehicle fuel, valued at $50,000 or more in the aggregate for each 12-month period" to be made by one of several enumerated purchasing methods); *id.* § 44.032(b) (providing that it is a Class B misdemeanor for an "agent of a school district" to authorize, with criminal negligence, "separate, sequential, or component purchases to avoid the requirements of [§] 44.031(a) or (b)"); TEX. GOV'T CODE ANN. § 2254.035 ("(a) A state agency may not divide a consulting services contract into more than one contract to avoid the requirements of this subchapter. (b) This section applies to all consulting services contracts, including renewals, amendments, and

8

extensions of consulting services contracts.").[5] RISD argues that "the framework of these laws requires that separate, sequential, or component purchases of services ordered or purchased from the same provider by the same officer or institution are treated as if part of a single purchase and a single contract." It contends "the Agreements must, in effect, be construed together" because the October agreement "was undeniably a continuation of the same services at the same compensation of $500 per day" as agreed to in July.

In his response to the plea in the trial court, Alejandro simply argued that the October 16, 2012 agreement was within Cano's authority to execute because "the total amount due" under the contract was $28,500—i.e., "a sum well below" the limit set forth in the CH(Local) policy. He further argued that the evidence attached to RISD's plea should be struck on hearsay and other grounds.

On appeal, Alejandro argues that, when "selecting a financial consultant, a school district . . . may choose to comply with either Texas Education Code [§] 44.031(a) *or* [Texas] Government Code[ §] 2254.003." *See* TEX. EDUC. CODE ANN. § 44.031(a); *id.* § 44.031(f) ("A school district may, at its option, contract for professional services rendered by a financial consultant . . . in the manner provided by [§] 2254.003, Government Code, in lieu of the methods provided by this section."); TEX. GOV'T CODE ANN. § 2254.003(a) (requiring governmental entities to "select a provider of professional services" or "award a contract for the services . . . (1) on the basis of demonstrated

---

[5] RISD also cites local government code § 271.029, which is applicable to school districts and which it claims is "like [§] 44.032 of the Texas Education Code" in that it "prescribes penalties for an officer or employee of a governmental entity who makes or authorizes separate, sequential, or component purchases to avoid the statute's requirements." In fact, § 271.029 applies only when multiple purchases are made "to avoid the competitive bidding requirements of the statute that requires a contract described by [§] 271.024 to be awarded on the basis of competitive bids." TEX. LOC. GOV'T CODE ANN. § 271.029(a). There is no suggestion that that multiple consulting agreements with Alejandro were made for that reason. This statute is not applicable to this case.

competence and qualifications to perform the services; and (2) for a fair and reasonable price"). He further contends that, although "the only complaint raised by RISD purportedly pertains to the alleged failure to comply with [§] 44.031," Cano "chose not to adopt the provisions" of that statute pursuant to the authority validly delegated to him by the board.[6]

Alejandro misunderstands RISD's argument. The question is not whether the district complied with statutorily-required purchasing procedures, such as those set forth in the education and government codes, before entering into the consulting agreement with him. The question is whether Cano had the authority, as delegated by the board, to execute this particular contract on the district's behalf. Contrary to Alejandro's claim, RISD has never complained about the "alleged failure to comply with [§] 44.031" of the education code—it has consistently asserted only that the contract was not "properly executed" on its behalf because Cano lacked the authority to bind it to this type of contract without board approval.

That said, we conclude RISD has failed to establish that Cano lacked that authority. The CH(Local) policy explicitly and broadly delegated to the superintendent "the authority to make budgeted purchases for goods or services." There is no dispute that Cano was RISD's superintendent on October 16, 2012, nor is there any dispute that the payments to Alejandro contemplated in the agreement constituted "budgeted purchases

---

[6] In his brief, Alejandro also argues that RISD's live answer in the trial court failed to comply with Texas Rule of Civil Procedure 93(7) because it was verified by the "newly appointed RISD superintendent" who "would have no knowledge of the circumstances leading up to the execution of Alejandro's contract with RISD." *See* TEX. R. CIV. P. 93(7) (providing that a pleading alleging "[d]enial of the execution by himself or by his authority of any instrument in writing, upon which any pleading is founded" must be verified by affidavit, and "[i]n the absence of such a sworn plea, the instrument shall be received in evidence as fully proved"). We note that RISD does not deny that Cano personally signed the agreement, nor did it dispute that the version of the agreement offered into evidence was authentic and admissible. In any event, even assuming Rule 93(7) applies to RISD's defense, the affidavit by the "newly appointed" superintendent is valid on its face and complies with the rule.

for . . . services." *See* TEX. EDUC. CODE ANN. § 44.006 ("Public funds of the school district may not be spent in any manner other than as provided for in the budget adopted by the board of trustees . . . ."); *see also Edcouch-Elsa Indep. Sch. Dist. v. Comprehensive Training Ctr., LLC*, No. 13-23-00108-CV, 2024 WL 3708934, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 8, 2024, pet. filed) (mem. op.) (involving similar policy and concluding no waiver of immunity under Chapter 271 because purchases were not "budgeted"). The policy stated that "any single, budgeted purchase . . . that costs $50,000 or more" requires board pre-approval, but it is undisputed that Cano made no "single" purchase of $50,000 or more. Instead, he made one agreement to purchase Alejandro's services on July 9, 2012, for $500 per day over an unspecified term; and he made a second purchase on October 16, 2012, for $28,500 over three months. The October agreement—the only one at issue in Alejandro's breach of contract claim—was a "single" purchase costing less than $50,000. Therefore, under the plain language of the policy, Cano was authorized to enter into the October 16, 2012 agreement.

RISD urges that the amounts paid and payable under both contracts must be aggregated for purposes of determining Cano's authority, but the authorities it cites in support of that proposition are unavailing. Education code § 44.031 provides that school district purchases "valued at $50,000 or more in the aggregate for each 12-month period" must generally be made by one of several specified methods, such as competitive bidding or a request for proposals. *See* TEX. EDUC. CODE ANN. § 44.031(a). And the government code forbids any "state agency" from "divid[ing] a consulting services contract into more than one contract to avoid" its requirements. *See* TEX. GOV'T CODE ANN. § 2254.035. But these statutes, by their own terms, do not apply in this case. *See* TEX. EDUC. CODE ANN.

11

§ 44.031(f) ("This section does not apply to a contract for professional services rendered . . . ."); TEX. GOV'T CODE ANN. § 2151.002 (defining "state agency" to exclude political subdivisions such as school districts).

To the extent the cited statutes may be helpful in this case, they provide examples of language that the RISD board could have adopted in the CH(Local) policy which would have unequivocally prohibited Cano from entering into these two contracts without board approval. Specifically, the policy could have said that "any budgeted purchase of goods or services *valued at $50,000 or more in the aggregate for each 12-month period* shall require Board approval." Alternatively, it could have said that "separate, sequential, or component purchases" made to avoid the $50,000 limit shall be considered one purchase. The fact that the drafters of the policy declined to employ this language, but instead confined the restriction on the superintendent's authority to "single" purchases of $50,000 or more, unambiguously indicates that they did not intend for multiple distinct purchases to be aggregated in this situation. We will not read into the policy language which was conspicuously omitted from it.

It is also noteworthy that RISD has not produced evidence demonstrating that the two contracts constituted a "single . . . purchase" under the circumstances. Instead, its human resources director recognized in her affidavit that the October 16, 2012 agreement constituted "*another* contract" with Alejandro "that provided he would continue performing the same services for the District through January 31, 2013" (emphasis added). RISD cites no authority, and we find none, providing that two separate contracts must be considered a "single" purchase under the policy merely because, as it alleges, the second

was "a continuation of the same services at the same compensation" as the first.[7]

For the foregoing reasons, Alejandro satisfied his initial burden to plead facts affirmatively demonstrating the trial court's jurisdiction. *See Town of Shady Shores*, 590 S.W.3d at 550. And, resolving all doubts in Alejandro's favor, *see Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 771, we conclude RISD failed to establish the trial court's lack of jurisdiction as a matter of law. *See Miranda*, 133 S.W.3d at 228. Therefore, the trial court did not err in denying RISD's plea to the jurisdiction. RISD's issue on appeal is overruled.

### III. CONCLUSION

The trial court's judgment is affirmed.

YSMAEL D. FONSECA
Justice

Delivered and filed on the
20th day of February, 2025.

---

[7] The parties do not cite any authority establishing the proper standard of review for the interpretation of a school board policy. We observe that a school board is generally "the ultimate interpreter of its policy," *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 565 (Tex. 2000) (noting that "the Board retains the authority to make the ultimate decision of whether the facts demonstrate that board policy was violated"), and RISD has apparently already determined that the October 16, 2012 consulting agreement violated its policy. *See Morath*, 2017 WL 3585252, at *2 & n.4. But a school board's discretion in interpreting its own policies is not unlimited—instead, it is "subject to the limits established by the Legislature in its provisions for administrative and judicial review." *Montgomery Indep. Sch. Dist.*, 34 S.W.3d at 565. Ordinarily, an administrative decision may be reversed on judicial review for erroneous conclusions of law. *See* Tex. Educ Code Ann. § 21.307(f). To the extent this law applies here, RISD's prior legal conclusion that the October 16, 2012 consulting agreement violated its policy is not controlling because it is erroneous for the reasons set forth above.

13